653 A.2d 1259

**Lawrence SMITH, Appellant,**

v.

**Carol SMITH, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1994.

Filed Feb. 1, 1995.

288

Gordon D. Fisher, Pittsburgh, for appellant.

David S. Pollock, Pittsburgh, for appellee.

Before JOHNSON, HUDOCK and CERCONE, JJ.

HUDOCK, Judge:

Lawrence Smith (Husband) appeals from the amended final decree entered in the Court of Common Pleas of Allegheny County, which sustained in part and denied in part various exceptions to a Master's report and recommendation in an equitable distribution award. We affirm.

The facts and procedural history may be summarized as follows: Husband and Carol Smith (Wife) were married on August 11, 1955 and separated on June 14, 1985. The parties had two children, both of whom were emancipated adults by the date of distribution.

Husband, age sixty at the time of the hearing, was employed by Koppers Company, Inc. in various capacities related to the construction of steel production facilities from 1955 until August of 1988. Since his termination from Koppers in 1988, Husband has done occasional independent consulting work for steel and engineering companies but has been unable to resume full-time employment.

Wife, age fifty-nine on the hearing date, received a college degree in elementary education and worked full-time teaching from 1955 until 1961. Wife stopped working as a teacher and devoted her attention to the duties of a homemaker when her daughter was born. Once the parties separated, Wife resumed her teaching career by substitute teaching in local school districts. Wife has been unable to obtain a permanent teaching position since the parties separated.

Husband filed for divorce on July 17, 1985. Wife filed an answer and counterclaim to Husband's complaint in divorce requesting that Husband be ordered to provide child support, spousal support and alimony *pendente lite*. Husband was subsequently ordered to pay Wife $1,100.00 per month for child support and alimony *pendente lite* and $666.00 per month for the college education of their daughter. Husband was also required to maintain medical and life insurance for Wife. In December of 1986, Wife voluntarily terminated Husband's support obligation.

On August 17, 1988, the trial court entered an order prohibiting bifurcation of the divorce action unless Husband agreed to continue to provide for Wife's health insurance, life insurance and survival pension benefits. Husband agreed to the court's conditions and a final decree in divorce was entered on December 9, 1988, reserving all pending claims for further disposition. Husband discontinued health insurance coverage for Wife in November of 1991 in violation of the court's bifurcation order. As a result, Wife filed a petition for contempt on July 8, 1992. On August 19, 1992, the trial court referred the case to a Special Master in order to resolve the parties' economic disputes and petition for contempt.

On January 6 and January 18, 1993, a hearing was held before an appointed Master, Attorney James Beck. After hearing extensive testimony from both parties, the Master prepared a twenty-page report which recommended that Husband receive $715,956.00 or 53% of the marital estate. The Master also found that Husband was in contempt for failing to abide by the trial court's order conditioning bifurcation.

Both parties filed timely exceptions to the Master's report and recommendation. On November 1, 1993, the trial court conducted a hearing to adjudicate the parties' exceptions. On November 4, 1993, the Honorable Eugene B. Strassburger, III, entered a final order which was subsequently amended by his November 8, 1993 amended final decree. In the amended final decree, Judge Strassburger sustained four of Husband's exceptions and one of Wife's cross-exceptions. He then ordered the following equitable distribution award:

1) Wife is hereby awarded the following:

a) The marital residence located at 2064 Hampstead Drive ($103,000.00);

b) Survivor's Option of Husband's Defined Benefit Plan ($49,623.00);

c) The cash surrender value of Wife's life insurance policies ($1,130.00);

d) The parties' Merrill–Lynch Financial Account ($625.00);

e) The GTO automobile ($600.00);

f) The Pontiac LeManns automobile ($425.00);

g) Household goods in Wife's possession ($6,000.00) [;]

h) Koppers stock previously liquidated by Wife ($42,-311.00);

i) The increase in value of gifts and inheritance received by Wife ($23,149.00);

j) Wife's Individual Retirement Account ($6,100.00);

k) The PNB Liquid Deposit Fund ($4,200.00);

l) The sum of $120,000 cash from Husband's Deferred compensation Unit Plan ($120,000.00);

m) The sum of $175,000.00 or 60.375% of Husband's Koppers Defined Benefit Plan. A Qualified Domestic Relations Order shall be executed by the parties wherein Wife is awarded $1,500.00 per month from the Plan and Husband is awarded the remaining monthly balance;

n) Fifty (50) shares of Hi–Tech Plating Company stock.

2) Husband is hereby awarded the following:

a) The remaining balance of his Koppers Deferred Compensation Unit Plan ($411,414.00);

b) The remaining present lump sum value of his Koppers Defined Benefit Plan ($113,438.00);

c) The real property located at Beulah Road ($5,000.00);

d) Husband's Koppers Supplemental Pension Plan ($76,-799.00);

e) Husband's PNB Individual Retirement Account ($2,492.00);

f) Husband's Employee Stock Ownership Plan ($4,458.00);

g) The cash surrender value of Husband's life insurance policies ($4,989.00);

h) Husband's Koppers Employee Savings Plan ($21,-866.00);

i) Fifty (50) shares of Hi–Tech Plating Company stock;

j) The household goods in Husband's possession ($500.00).

Amended Final Decree, 11/8/93, at pp. 2–4.

The trial judge also awarded Husband a 1957 Mercedes–Benz automobile valued at $175,000.00 when he sustained Husband's exception challenging the Master's award distributing the automobile to Wife. Wife's cross-exception requesting that Husband be ordered to reimburse her for health insurance was also sustained, requiring Husband to pay Wife an additional $1,572.00. Husband filed a timely appeal to the amended final decree on December 6, 1993, in which he raises the following issues for our review:

1. WHETHER THE TRIAL COURT PROPERLY CONSIDERED THE CRITERIA SET FORTH IN THE DIVORCE CODE WITH RESPECT TO ITS AWARD OF EQUITABLE DISTRIBUTION?

2. WHETHER THE GIFTS AND INHERITANCES AND INCREMENTAL VALUE OF GIFTS AND INHERITANCES RECEIVED BY WIFE WERE PROPERLY VALUED BY THE TRIAL COURT?

3. WHETHER THE TRIAL COURT PROPERLY CONSIDERED TAX LIABILITY IN ITS AWARD OF EQUITABLE DISTRIBUTION?

4. WHETHER THE TRIAL COURT ERRED IN DETERMINING THE VALUE AND IDENTITY OF MARITAL PROPERTY AND MARITAL LIABILITIES?

Husband's Brief, at p. 6.

When reviewing an appeal to an equitable distribution award, we adhere to the following standard:

Our scope of review in equitable distribution matters is limited. *Lyons v. Lyons,* 401 Pa.Super. 271, 276, 585 A.2d 42, 45 (1991). It is well established that "absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution." *Hill v. Hill,* 401 Pa.Super. 183, 185, 584 A.2d 1040, 1041 (1991), *citing Hovis v. Hovis,* 518 Pa. 137, 541 A.2d 1378 (1988). When reviewing the record of the proceedings, we are guided by the fact

that trial courts have broad equitable powers to effectuate justice and we will find an abuse of discretion only if the trial court has misapplied the law or failed to follow proper legal procedures. *Lyons v. Lyons, supra* [401 Pa.Super.] at 276, 585 A.2d at 45. The finder of fact is entitled to weigh the evidence presented and access its credibility. *Williamson v. Williamson,* 402 Pa.Super. 276, 286, 586 A.2d 967, 972 (1991). The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Fonzi v. Fonzi,* 430 Pa.Super. 95, 99–100, 633 A.2d 634, 636–37 (1993) (quoting *Murphy v. Murphy,* 410 Pa.Super. 146, 599 A.2d 647 (1991), *alloc. den.,* 530 Pa. 633, 606 A.2d 902 (1992), *cert. den.,* —— U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 139). Moreover:

> We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of [section 3502(a) ] factors. If we fail to find an abuse of discretion, the [o]rder must stand.

*McNaughton v. McNaughton,* 412 Pa.Super. 409, 413, 603 A.2d 646, 648 (1992) (quoting *Sutliff v. Sutliff,* 361 Pa.Super. 504, 520, 522 A.2d 1144, 1152 (1987), *rev'd on other grounds,* 518 Pa. 378, 543 A.2d 534 (1988)).

Husband first alleges that the trial court did not properly weigh and apply the various criteria set forth in the Divorce Code, 23 Pa.C.S. § 3502(a)(1)–(11), when fashioning its equitable distribution award. Husband claims that he is entitled to a greater portion of the marital estate based on an evaluation of the various statutory factors. Specifically, Husband argues that the final decree awarding him approximately 61% of the marital estate was unfair considering the fact that he is sixty-one-years old, in poor health, unable to sustain a full-time schedule or job, and unlikely to acquire future assets or income. Husband claims that Wife should be given a smaller

share of the marital estate based on her substantial separate assets and ability to obtain a full-time teaching position.

Wife, on the other hand, argues that the trial court correctly applied the eleven factors found in 23 Pa.C.S. § 3502(a), and arrived at a fair and reasonable distribution of the marital property.

When fashioning equitable distribution awards, the trial court must weigh and apply the eleven criteria found in 23 Pa.C.S. § 3502(a) in order to "[e]ffectuate economic justice between parties" and "insure a fair and just determination and settlement of their property rights." *See* 23 Pa.C.S. § 3102(a)(6). This Court has previously explained:

We note that there is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors of [section 3502(a)] serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

*Semasek v. Semasek*, 331 Pa.Super. 1, 11, 479 A.2d 1047, 1052 (1984), *modified*, 509 Pa. 282, 502 A.2d 109 (1985).

After conducting two full days of testimony, the Master prepared a thorough twenty-page report in which he made twenty-three findings concerning the nature and value of the parties' marital estate. The Master carefully addressed the following relevant factors: (1) the parties were married for thirty years; (2) Wife continues to work once or twice a week as a substitute teacher making at most $75.00 per day; (3) Husband continues to search for independent consulting work in his field; (4) the parties' present annual income is approximately equal; (5) because of their ages, it is unlikely that either party will begin a new career or increase their present annual income; (6) both parties will rely on part-time employment, retirement benefits, or investments as their primary source of income; (7) both parties have experienced health problems, yet neither one is prevented from working because

of these problems; (8) it is unlikely that either party will acquire substantial capital assets in the future. Based on these factors, the Master awarded Husband 53% of the marital estate.

Husband filed sixty-four exceptions to the Master's report and recommendation arguing that he was entitled to a greater percentage of the marital estate. Husband argued that the Master failed to consider and give substantial weight to Wife's sizable non-marital estate. The trial judge agreed with Husband that Wife's non-marital property, valued at approximately $700,000.00, was entitled to greater consideration. Accordingly, the trial judge increased Husband's share to $815,956.00, or 61% of the marital estate, by awarding the parties' 1957 Mercedes–Benz automobile valued at $175,000.00 to Husband. The trial judge awarded Wife an additional $75,000.00 from Husband's defined benefit plan, but reduced her overall share of the marital estate by 8% as she was awarded $532,163.00 in marital assets.

■ Examining the distribution scheme as a whole, we do not find that the trial court abused its discretion when awarding Husband 61% of the marital estate. The Master and the trial court carefully considered the relevant factors when fashioning the equitable distribution award. Both the Master and the trial court provided a detailed analysis of how they computed each parties' share of the marital estate. The Master and trial court obviously concluded that, with the exception of Wife's sizable separate estate, the parties were on equal footing after comparing the other statutory factors. Wife's separate estate was counterbalanced by Husband's generous retirement benefits from Koppers, the award of the $175,000.00 classic automobile, and a skewed distribution awarding him 11% more of the marital estate than Wife.

■ Husband emphasizes that his old age and poor health prevent him from obtaining future employment. The Master and trial court, however, determined that Husband was capable of obtaining part-time employment and was not hindered by his health problems. Husband admitted that his health

problems did not prohibit him from working full-time. We will not disturb the trial court's credibility determination regarding Husband's ability to work.

Husband claims that Wife maintains a full-time teaching position and thus has greater monthly income. The trial court found that Wife was only substitute teaching one to two days a week without benefits. The trial court found that it was unlikely that Wife would obtain a full-time teaching position considering her age and number of years absent from the work force. Finding no error of law or abuse of discretion in the distribution of the parties' marital property, we affirm the trial court's distribution.

In Husband's second argument he alleges that the trial court erred when valuing the increase in value of gifts and inheritance received by Wife during the parties' marriage. Husband contends that Wife omitted numerous income gains from her valuation of the marital portion of her gifts and inheritance.

Wife submits that the trial court's valuation of the marital portion of her gifts and inheritance was reasonable considering the complexity of the transactions involved. Wife argues that the trial court's valuation was based on a credibility determination which may not be disturbed on appeal. Last, Wife points out that Husband failed to offer an alternative valuation.

During the parties' marriage Wife received numerous gifts of stock from her father, as well as a sizable inheritance from her mother comprised of stocks and money valued at approximately $700,000.00. Although these gifts and inheritance are not marital property, the increase in the value thereof during marriage was properly distributed as "marital property." 23 Pa.C.S. 3501(a). Furthermore, the increase in the value of Wife's stock which she received prior to marriage is also marital property subject to equitable distribution. *Aletto v. Aletto*, 371 Pa.Super. 230, 234–36, 537 A.2d 1383, 1385 (1988).

■ The Divorce Code does not specify a particular method of valuing assets. The Master and trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. *Id.* at 1389.

At the Master's hearing, Wife called her investment broker, Ms. Elvira Bachovchin, to provide a valuation of the marital portion of Wife's gifts and inheritance. Ms. Bachovchin testified that she arrived at her calculations by analyzing Wife's income tax returns, personal stock ledger and inheritance tax return from Wife's mother's estate. Ms. Bachovchin testified that the increase in value of the stocks, which Wife received as a gift from her father, from August of 1955 until June of 1985, was $12,055.00, and the increase in value of the inheritance Wife received from her mother's estate was $11,094.00. The Master and trial court adopted Ms. Bachovchin's valuation and concluded that the marital portion of Wife's gifts and inheritance was $23,149.00.

On cross-examination, Ms. Bachovchin admitted that certain shares of stock were omitted from her calculation due to Wife's incomplete records. Ms. Bachovchin also acknowledged that she never saw Wife's stock ledger book, but that Wife relayed the necessary information to her from that book. She explained that given the large number of transactions involved, it was understandable that Wife's records were incomplete.

Husband challenged Ms. Bachovchin's figures during cross-examination. He questioned her at length about several stocks which Wife received from her father or mother which were subsequently sold and omitted from her calculation. Husband also pointed out that Ms. Bachovchin's figures did not include the interest earned by Wife on various bank accounts which she acquired from her mother's estate.[1]

The Master dismissed Husband's complaint by stating:

1. Prior to her mother's death in 1983, Wife was gifted a one-half interest as a joint tenant with her mother on several bank accounts. After her mother's death, Wife, as the surviving joint tenant, received sole possession of these bank accounts. Husband argues that Ms.

While HUSBAND did point out these discrepancies, we find that no evidence was offered as to the increase in value of these unaccounted shares and we also find that, as compared to the entire amount of gifts and inheritances, these amounts· would be minimal in nature. If there were an increase in value (or loss) in these few shares of stocks, we believe that the finding of the increase in value of the non-marital estate belonging to WIFE is as accurate as can be expected taking into account the complexity of the various estates and the number of years involved in which the stocks were relevant.

Master's Report and Recommendation, 5/5/93, at p. 13.

The trial court agreed with the Master and stated:

While the Master acknowledged the incompleteness of the records, he decided that the records were as accurate as could be expected given the complexity of the various estates and the number of years for which records were relevant. (M. Report, pp. 12–13). A review of the relevant portions of the transcript indicates that the Master was correct in his assessment.

Trial Court Opinion, 4/18/94, at p. 6.

 We recognize that Wife's calculation of the marital portion of her gifts and inheritance omitted several stocks. The record does not reveal whether these omissions were "minimal" as the trial court concluded. However, we do not find that this omission requires this Court to remand for a new valuation. The Superior Court may affirm the action of the trial court for reasons other than those relied upon by the

Bachovchin's calculations should have included the interest earned on these bank accounts while Wife's mother was still alive. Wife, on the other hand, argues that she should not be charged with the interest earned while her mother was still alive since she was named a joint tenant on these accounts solely for convenience purposes. Wife claimed that she did not have access or control over these funds until her mother died in 1983. The record does not reveal whether Wife had sufficient control over the bank accounts to be charged with the interest earned. However, because we conclude, *infra,* that Husband has not presented sufficient evidence of an alternative valuation, and this item of interest should have been included therein, it is unnecessary to remand this case to the trial court for a determination of this issue.

trial judge. *Strickler v. Huffine,* 421 Pa.Super. 463, 473, 618 A.2d 430, 436 (1992), *alloc. den.,* 536 Pa. 630, 637 A.2d 290 (1993).

Wife had the burden of producing evidence of the increased value of the gifts and inheritance she received during the parties' marriage since she had exclusive control over the relevant records. *See Aletto,* 537 A.2d 1386 n. 5. Wife met this burden by offering the expert testimony of her investment broker, Ms. Bachovchin. Wife and Ms. Bachovchin admitted that their estimate of the marital portion of Wife's gifts and inheritance omitted various stock transactions and accrued interest because Wife failed to keep detailed records after her separation from Husband. If Husband disagreed with Wife's valuation, it was his burden to provide the court with an alternative valuation. Wife provided Husband with her stock ledger book, which recorded the date Wife received the stock and the number of shares received, as well as Wife's individual income tax returns and the inheritance tax form from her mother's estate. With the help of a financial expert, Husband could have calculated the increase in the value of the stocks from the date Wife received the shares until the date of separation.[2]

Despite his contention that Wife's figures are wrong, Husband did not present his own expert valuation of the marital portion of Wife's gifts and inheritance, nor did he offer his own calculation of the increase in value Wife received. When one party offers uncontradicted evidence of the value of a particular marital asset, this Court may adopt that value even if the resulting valuation would have been different if more accurate and complete evidence had been presented.

**2.** When cross-examining Ms. Bachovchin and Wife, Husband was able to identify the number of shares of each stock which Wife omitted from her calculation, as well as the date when Wife received her gift or inheritance. With this information, Husband could have researched the price of stock on the date of separation and calculated an estimated valuation of the increase in value. There is no evidence that Wife intentionally omitted these stocks from her calculation or that she attempted to conceal the true value of the gain she received from the gifts of stock.

*Holland v. Holland,* 403 Pa.Super. 116, 118–20, 588 A.2d 58, 60 (1991), *alloc. den.,* 528 Pa. 611, 596 A.2d 158. The trial court was free to accept all of Wife's testimony, portions of her testimony, or none of her testimony regarding the true and correct value of the income she received from the gifts and inheritance. *Aletto,* 371 Pa.Super. 242, 537 A.2d at 1389.

The analysis set forth in *Bold v. Bold,* 358 Pa.Super. 7, 516 A.2d 741 (1986), regarding the valuation of the appellant's pension is applicable to the present case. In *Bold,* husband-appellant argued that the trial court assigned an improper value to his pension. At the Master's hearing, the husband provided documents and personal testimony as to the value of his pension, but he did not calculate the final dollar amount of his pension. The wife, on the other hand, presented expert testimony from an economist who made detailed calculations of the husband's pension. The Master and trial court accepted the wife's calculations and valuation of her husband's pension. This Court upheld the trial court's valuation and stated:

> [Wife's] calculations go beyond the basic figures presented by husband, and provide the court with a workable present value of the pension. Husband was permitted to cross-examine the expert, and has not, at the hearings, through exceptions, or on appeal, shown specifically where these calculations are erroneous. Thus, the trial court did not err in accepting the master's recommendation based on the essentially uncontradicted testimony of the expert witness.

*Id.,* 358 Pa.Super. 13, 516 A.2d at 744.

This Court's decision in *Miller v. Miller,* 421 Pa.Super. 23, 617 A.2d 375 (1992), is also applicable to the present case. In that appeal, the husband argued that the trial court improperly valued his pension by adopting the report of his wife's accounting expert. We disagreed and stated:

> Husband had an opportunity to challenge the expert's report and also to present his own expert valuation of his pension, but he chose not to do so. He merely offered an

unsubstantiated alternate calculation of the present value of the marital portion of the pension.

*Id.,* 421 Pa.Super. 29, 617 A.2d at 378.

Our decision in *Aletto v. Aletto, supra,* must be distinguished from the present case. In *Aletto,* the husband argued that the increase in the value of stock, which his wife received prior to marriage, was marital property subject to equitable distribution. We agreed with the husband and remanded for the trial court to determine the value of the increase. The husband presented evidence that the increase in the value of the wife's stock was over one million dollars, while the wife valued the increase at $100,000.00. We acknowledged that the trial court may have a difficult time determining the value of the marital portion of the wife's stocks and stated:

We recognize that the valuation of the increase may prove difficult because of the wife's father's failure to cooperate and because of wife's claimed ignorance. However, we have reviewed the testimony presented, and we find that sufficient testimony was presented to enable the court to set an approximate value.

*Id.,* 371 Pa.Super. 237, 537 A.2d at 1386 n. 5.

Unlike the situation in *Aletto,* Husband did not offer any evidence which would permit the Master or trial court to estimate an alternative value for the increase in value of Wife's gifts and inheritance. Husband did not present sufficient testimony at the equitable distribution hearing to prove that the stocks which Wife omitted would substantially increase the value of the marital portion of Wife's gifts and inheritance, consequently altering the equitable distribution award.

Accordingly, we find that the trial court did not abuse its discretion when accepting Wife's expert testimony and valuing the marital portion of her gifts and inheritance at $23,149.00.

In his third question presented, Husband argues that the trial court should have deducted the potential tax liability associated with the distribution of his defined benefit pension plan and supplemental pension plan. Wife counters this argu-

ment by pointing out that the final amended decree ordered the parties to execute a qualified domestic relations order (QDRO) to distribute Husband's defined benefit pension plan. According to the terms of the QDRO, Wife receives $175,-000.00 or 60.375% of Husband's pension plan in monthly payments of $1,500.00. Husband receives the remaining balance of the pension plan in equal monthly installments of $2,909.00. Wife argues that the trial court should not consider Husband's tax liability since both she and Husband must pay income taxes on their share of the monthly benefits.

With respect to the supplemental pension plan, which serves as a replacement plan for social security while Husband is between the ages of fifty-five and sixty-five, Wife claims that the trial court characterized Husband's benefits as part income and part asset. She claims that Husband will pay *de minimus* tax liability on this plan since he was sixty-one years old when the distribution was ordered and only has four more years of distribution. Wife also claims that Husband's tax liability on the supplemental pension was offset by the fact that she was awarded his survivor option at pre-tax values.

One factor which the trial court must consider when devising an equitable distribution award is "[t]he economic circumstances of each party, including Federal, State and local tax ramifications, at the time the division of property is to become effective." 23 Pa.C.S. § 3502(a)(10).

■■ Our Supreme Court addressed the issue of potential tax liability as it affects the equitable distribution of property in *Hovis v. Hovis,* 518 Pa. 137, 541 A.2d 1378 (1988). The Court explained:

> If a taxable event such as a sale or other transfer of property is required by the award of equitable distribution, or is certain to occur shortly thereafter, the tax liability of the parties can be reasonably ascertainable. However, where there is merely a likelihood or possibility that a taxable event will occur, the court is left to speculate as to the tax consequences.

* * * * * *

In order to insure a "fair and just determination and settlement of property rights" we favor predictability over mere surmise in the valuation and distribution of marital property after divorce. Accordingly, we hold that potential tax liability may be considered in valuing marital assets only where a taxable event has occurred as a result of the divorce or equitable distribution of property or is certain to occur within a time frame such that the tax liability can be reasonably predicted.

*Id.*, 518 Pa. 142–143, 541 A.2d at 1380–81 (footnote omitted).[3]

■ When distributing Husband's defined benefit pension plan, the trial court chose a deferred distribution. *See Braderman v. Braderman*, 339 Pa.Super. 185, 488 A.2d 613 (1985), for a detailed discussion of the alternative methods of distributing a spouse's pension plan. The parties were ordered to execute a qualified domestic relations order which would provide each spouse with their appropriate share of Husband's pension. The trial court did not deduct the tax liability associated with the distribution of this pension since each party would receive their share of the pension in monthly payments for the remainder of their lives. The tax liability associated with each monthly distribution is speculative since the amount of taxes Husband and Wife must pay depends on changing variables. Rather than speculate as to how much each party would pay in taxes, the trial court appropriately assessed a pre-tax value to Husband's pension.

■ With regard to Husband's supplemental pension, the same analysis applies. Under this plan, Husband receives $801.00 per month until he reaches age sixty-five. Husband's tax liability for the remaining four years of distribution is

3. Husband claims that *Hovis* was overruled by the 1988 amendment to the Divorce Code which mandated that the court consider the tax ramifications of a proposed equitable distribution award. *See* 23 Pa. C.S. § 3502(a)(10). We disagree. The 1988 amendment to the Divorce Code adding tax ramifications was intended to codify the decision in *Diamond v. Diamond*, 360 Pa.Super. 101, 519 A.2d 1012 (1987), *alloc. den.*, 516 Pa. 633, 533 A.2d 92, and in *Hovis v. Hovis, supra*. *See* JOANNE ROSS WILDER, PENNSYLVANIA FAMILY LAW PRACTICE AND PROCEDURE, 3rd Ed., at p. 242.

speculative since his tax liability will vary depending on factors such as his gross income, tax bracket and tax rate.

Husband's final issue challenges the trial court's identification and valuation of certain marital property. We will address Husband's allegations in the order presented in his brief. First, Husband claims that the trial court failed to credit Wife with dividends of Hi–Tech Plating Company stock which she earned from the date of the parties' separation until the date of distribution. Husband claims that Wife received $8,052.87 in dividends from 1985 until 1992, while Husband received only $606.48. Husband seeks an adjustment in the distribution scheme based on these dividends.

In reply to this allegation, Wife claims that she used the post-separation dividends to purchase additional insurance for the Mercedes–Benz, thus preserving a marital asset which was subsequently awarded to Husband.

Initially we note that the trial court is directed to consider the "contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property[.]" 23 Pa.C.S. § 3502(a)(7). The record reveals that Wife did receive approximately $1,400.00 in annual dividends from the Hi–Tech Plating Company stock. Wife admitted that when she received the annual dividend check, she deposited it in the parties' joint account at Pittsburgh National Bank (PNB). On cross-examination Wife explained that from 1985 to 1987 she used the dividend income to pay for household and educational expenses. In 1988 Husband froze the parties' joint account at PNB preventing Wife from deducting any money from the account until 1990. For the years 1990 through 1992, Wife testified that the dividend income was used to pay for additional insurance on the 1957 Mercedes–Benz.

The trial court dismissed Husband's claim by reasoning that since Wife applied the dividend income to additional car insurance, her actions "preserved" a marital asset. Therefore, the court felt that it did not have to credit Wife with such dividend income.

 The trial court's analysis for the years 1990 to 1992 is correct. If a spouse uses marital funds to satisfy the parties' joint obligations, this constitutes a disposition in good faith and the spouse does not have to account for such marital funds. These marital funds are properly excluded from the marital estate. *See Duff v. Duff,* 510 Pa. 251, 507 A.2d 371 (1986). The trial court, however, overlooked the fact that Wife used the dividend income for non-marital obligations for the years 1985 to 1987. Husband testified that he never took money out of the parties' joint account at PNB. According to Husband's calculations and trial testimony, Wife received an additional $4,747.76 from Hi–Tech Plating Company stock dividends for the years 1985 to 1987 which should have been credited to her as a marital asset.

Despite Husband's valid claim, we do not find it necessary to reverse the trial court's equitable distribution scheme. The total amount of assets in the parties' marital estate was approximately $1,348,119.00. We do not find that an additional $4,747.76 credited to Wife's marital assets would disturb the trial court's overall distribution scheme.

 Husband next alleges that the trial court should have credited him with real estate taxes he paid for the vacant land located on Beulah Road totaling $2,897.13, as well as $8,176.49 in maintenance expenses he paid for his Mercedes–Benz. We disagree. We note that it is within the trial court's discretion to credit marital expenses to one of the parties and take such credit into account when dividing marital property. *Winters v. Winters,* 355 Pa.Super. 64, 72–73, 512 A.2d 1211, 1216 (1986). The record reveals that Wife maintained the marital residence with her separate funds. The Master and trial court were aware that each party contributed to the preservation of marital assets and this factor was appropriately considered when distributing the marital property.

Last, Husband claims that the court should have valued his deferred compensation unit plan, employee savings plan, and IRA as of the date of separation, not the date of distribution. Wife claims that the trial court properly applied our Supreme

Court's decision, *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988). That case held that in most instances, the trial court should use a valuation date as close to the date of distribution as possible.

■ The Pennsylvania Divorce Code does not specify what date marital property should be valued for purposes of equitable distribution. Although the Code establishes the date of separation as the demarcation point to identify marital property, it does not specify the time when marital assets must be valued. Absent a specific guideline, trial courts are given discretion to choose a date of valuation which best provides for "economic justice" between the parties. *Miller v. Miller,* 395 Pa.Super. 255, 262–63, 577 A.2d 205, 209 (1990), *alloc. den.,* 525 Pa. 664, 583 A.2d 794. "To recognize a specific valuation date as a matter of law would deprive the trial court of the necessary discretion required to effectuate economic justice." *Sergi v. Sergi,* 351 Pa.Super. 588, 594–96, 506 A.2d 928, 932 (1986). However, "equitable results will most likely flow from providing the court with the most recent information available...." *Id.*

The Supreme Court of Pennsylvania agreed with the analysis in *Sergi* and held:

> It is implicit, however, in the statutory provisions governing equitable distribution that a valuation date reasonably proximate to the date of distribution must, in the usual case, be utilized.

*Sutliff,* 518 Pa. 378, 543 A.2d at 536.

■ Despite a preference for valuing marital assets at or near the time of distribution, there may be circumstances where it is more appropriate to value marital assets as of the date of separation. *Naddeo v. Naddeo,* 426 Pa.Super. 131, 136–38, 626 A.2d 608, 611 (1993). For example, in situations where one spouse consumes or disposes of marital assets following separation without the other spouse's consent, it may be more equitable to value the marital asset as of the date of separation. *See Sutliff, supra,* 518 Pa. 378, 543 A.2d 536. Likewise, when valuing a closely held business which is largely

controlled by one spouse during the period of separation, it may be appropriate to value the business as of the date of separation. *See Benson v. Benson,* 425 Pa.Super. 215, 624 A.2d 644 (1993), *alloc. den.,* 536 Pa. 637, 639 A.2d 22 (1994); *McNaughton v. McNaughton,* 412 Pa.Super. 409, 603 A.2d 646 (1992). In the present case, Husband's deferred compensation plan, employee savings plan and IRA were marital assets subject to equitable distribution. Wife was entitled to a portion of these retirement plans attributable to the period commencing with the marriage and ending on the date the parties separated. *King v. King,* 332 Pa.Super. 526, 530, 481 A.2d 913, 915 (1984). However, Wife was also entitled to any increase in the value of the marital property component of these retirement plans, exclusive of additional contributions made by Husband or his employer. *Berrington v. Berrington,* 534 Pa. 393, 402–04, 633 A.2d 589, 594 (1993).

■ The increase in the value of Husband's deferred compensation plan, employee savings plan and IRA, from the date of separation until the date of distribution, was not a result of Husband's post-separation contributions. Husband admitted that he made no contributions to these retirement funds post-separation. Therefore, the most appropriate date for valuing Husband's various pension plans is the date of distribution. We therefore dismiss Husband's last claim.

Order affirmed.