J-S28017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ERIC MARVEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BOBBI MARVEL | : | |
| | : | |
| Appellant | : | No. 474 MDA 2022 |

Appeal from the Decree Entered March 2, 2022
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-18-10869

BEFORE:  OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: DECEMBER 6, 2022**

Bobbi Marvel ("Wife") appeals *pro se* from the decree divorcing the parties and equitably distributing their marital property.[1] Wife argues the court erred in adopting the divorce master's determinations regarding certain assets and debts for equitable distribution, in failing to consider Husband's dissipation of marital assets and to properly consider the parties' earning capacities, and in denying her request for alimony. We affirm.

Wife and Eric Marvel ("Husband") were married in 1993 and separated in 2011. Wife filed for spousal support in 2012. Husband filed a complaint for divorce in 2018. According to the trial court,

---

[1] Although Wife's notice of appeal references both the order adopting the Divorce Master's Report and the ensuing divorce decree, the appeal properly lies from the final decree of divorce and equitable distribution, and we have amended the caption accordingly. ***Schultz v. Schultz***, 70 A.3d 826, 829 (Pa.Super. 2013); ***Syno v. Syno***, 567 A.2d 717, 718 (Pa.Super. 1989).

The parties have no children. The parties have some history of domestic violence, and the separation and process leading up to the entrance of the divorce decree has been anything but amicable. The parties did not have substantial assets to divide in the divorce. Prior to the filing of the divorce, the marital home was foreclosed upon. The parties' residential rental property was sold at a short sale prior to the finalization of the divorce, leaving an amount of $4200 in rental income remaining to be divided between the parties. Neither party had substantial income or liquid assets, and there were minimal liabilities to consider.

Trial Court Opinion, April 19, 2022, at 1.

A hearing was held before a divorce master in the spring of 2021. The master issued a report recommending that 55% of the marital property be allocated to Wife. After assessing the value of the marital assets and debts, and dividing the total according to the equitable proportions, the master calculated that Wife owed husband $9,770. However, the master found that Husband owed Wife $38,136 in rent for seven years that he resided in the marital residence without paying the mortgage. The master offset this amount by the amount Wife owed Husband and concluded that Husband owed Wife the remaining $28,365.88.

The master found no alimony was warranted because Wife has cohabitated with Mark Stone since 2012. The master further concluded alimony was not appropriate because

Wife has minimal expenses and is earning sufficient wages to meet those expenses. The parties lived a moderate lifestyle, have similar education and training, similar needs, and are similar in age. Wife has been receiving support for nine (9) years of the eighteen (18) years the marriage was intact.

Master's Report, 9/2/21, at 12.

- 2 -

Both parties filed exceptions, and the court heard argument. On February 28, 2022, the court denied the exceptions, adopted the Master's Report, and ordered Husband to pay Wife the equitable distribution amount by monthly installments of $337.69 for seven years. On March 2, 2022, the court entered a divorce decree that included a final order of equitable distribution in accordance with both the court's preceding order and the Master's Report. Wife appealed.

Wife's brief fails to substantially conform to the Rules of Appellate Procedure. She does not include a statement of the questions involved, a summary of her argument, or an argument divided according to her questions. *See* Pa.R.A.P. 2111(a), 2116(a), 2118, 2119(a). Wife additionally fails to include any citations to relevant authorities, make specific reference to the certified record, or explain where in the record she preserved her issues. *See* Pa.R.A.P. 2119(b), (c), (e).

Failure to satisfy the briefing rules may result in waiver or quashal of an appeal. *See* Pa.R.A.P. 2101; *Karn v. Quick & Reilly Inc.*, 912 A.2d 329, 336 (Pa.Super. 2006) ("Appellate arguments which fail to adhere to these rules [of appellate procedure] may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention"). Nonetheless, we will review Wife's issues to the extent we can discern them. To the extent that we misconstrue or misunderstand her issues or arguments, they are waived.

- 3 -

We review the trial court's equitable distribution of marital property under 23 Pa.C.S.A. § 3502(a) for an abuse of discretion. ***Conner v. Conner***, 217 A.3d 301, 309 (Pa.Super. 2019) (citations and quotation marks omitted). "We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence." ***Id.*** (citation omitted). An abuse of discretion only occurs when "the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." ***Id.*** (citation omitted).

Wife first challenges the master's valuation[2] of the 2010 Jeep ($6,000) and 1991 Nissan ($900), which the master allocated as assets held by Wife. Regarding the Jeep, Wife argues that when the couple separated in 2011, the vehicle was approximately one year old, with a remaining loan balance of $25,000 and a $450/month payment. Wife argues the master should have assessed the vehicle as of the date of separation, and as debt, rather than as an asset using the trade-in value of $6,000, particularly as Wife did not trade the vehicle in until 2018, well after the date of separation.

The Divorce Code does not require a court to value marital assets as of the date of separation. ***Smith v. Smith***, 653 A.2d 1259, 1270 (Pa.Super. 1995). Rather, trial courts have "discretion to choose a date of valuation which

_____

[2] Although Wife challenges the court's denial of her exceptions and adoption of the findings in the Master's Report, in this memorandum we will on occasion refer to the master's findings directly.

- 4 -

best provides for 'economic justice' between the parties." ***Id.*** (citation omitted). Therefore, there is no merit to Wife's argument that the master should have valued the Jeep as of the date of separation and not the actual value received by Wife when she traded in the vehicle.

Regarding the Nissan, Wife claims the couple sold the vehicle together and split the proceeds. However, Wife does not assert that she presented any evidence of this to the master. The only evidence regarding the Nissan came from Husband, who testified that Wife kept the proceeds of the sale. N.T., 3/30/21 and 4/23/21, at 28-29. There was no abuse of discretion in assigning the full value to Wife as an asset.

Wife argues the court failed to properly assess the values of "a riding mower with plow, a professional slate top pool table, an antique Juke Box, a 3-wheeler, and a 4-wheeler." Wife's Br. at 22-23. She claims Husband had no proof that these items were broken or sold during the marriage.

Wife did not include this argument in her exceptions and does not even now state the value she believes the master should have assigned these items. Nor does she assert that she offered any testimony to substantiate a different valuation. She has therefore waived these issues.

Wife argues the master erred in assigning her a $6,390 marital asset consisting of rental income, because she asserts Husband told her to keep his portion of the rental income during certain months in lieu of spousal support. She claims she did not file for spousal support until she stopped receiving the rental income.

Husband testified that Wife received the rental income between the time of the parties' separation and the short sale of the rental property, and that the amount was not included as a source of income in the support action. N.T. at 26-27; **see also id.** at 67-69. Husband testified on cross-examination that while he recalled having a conversation with Wife about "keeping the rental checks as support," "that agreement went away" after intervening circumstances, including the commencement of the support action, because Wife was "getting the rent checks plus support." **Id.** at 65-66. However, Husband did not actually testify that he had told Wife to keep the earlier rental income in lieu of support, and Wife did not testify on this point. The master therefore did not abuse her discretion in determining the rental income Wife collected prior to the support action was marital property.

Wife next argues the master erred in considering two American Express credit balances and a Capital One credit balance as marital debt held by Husband, because they are dated after the separation. Husband testified that these bills were the result of the parties' finances during the marriage. **Id.** at 48-52, 61. Wife did not present this argument to the master and did not testify regarding these accounts. The master therefore did not abuse her discretion in considering these balances to be martial debt held by Husband.

Wife argues the master erred in failing to include her American Express and Hess bills as marital debt because she attached evidence of these to her pre-trial memorandum. However, Wife does not assert that she presented these documents as evidence at the hearing, and our review discloses that

Wife failed to do so. Therefore, the master did not abuse her discretion in failing to include them as marital debt.

Wife next argues the master failed to "[hold] Husband accountable for forcing a short sale on the rental property and a foreclosure on the marital home." Wife's Br. at 24 (unpaginated).

Contrary to Wife's assertion, "the [m]aster [gave] significant weight to the dissipation of the marital residence by Husband . . . ." Master's Report at 25. However, the master balanced this fact against others. These included "the non-payment on the mortgage of the rental property by Wife while receiving the rental income, [that] Husband had paid support to Wife during the nine (9) years the parties were separated, and that Wife is owner of [Stone's residence] but does not pay the mortgage, rent, utilities, or maintenance." *Id.* As the trial court noted, "[n]either party has clean hands with respect to the loss of the parties' real estate. . . . Wife may argue the dissipation, but it was adequately addressed." Trial Ct. Op. at 7. We discern no abuse of discretion on this point.

Wife argues the master erred when assessing her earning capacity. She argues the master should have considered that she would have received a portion of Husband's Social Security payments after retirement, but that "Husband depleted those funds by evading his taxes and not filing taxes (per his testimony)." Wife's Br. at 29. She argues she will not collect Social Security because she was a dependent spouse and only worked part-time.

Wife further argues the master undervalued Husband's earning capacity. She claims Husband's true income is reflected in his paystubs from 2008 that Wife entered into evidence. She claims Husband testified that "he does not file taxes and he works for case and '1099' forms," and alleges he did not show his actual earnings to the master. Wife's Br. at 28.

In her exceptions, Wife only generally challenged the master's findings regarding earning capacity and alleged the master had failed to assess her physical and mental health conditions and inability to work full time. She has therefore waived the instant arguments.

In any event, these issues are meritless. In determining the equitable proportion by which to divide marital property, the court must consider the vocational skills and employability of the parties in conjunction with a list of other factors, including the parties' age, health, sources of income, economic circumstances, and needs at the time the division of property is to be effective. *See* Pa.C.S.A. § 3502(a).

Regarding Wife's earning capacity, the court reviewed the Master's Report and found,

> The [m]aster also considered Wife's medical and mental health conditions, which Wife also highlights as reasons to justify receiving more in the overall resolution of the divorce because Wife states that she cannot work full-time. Although contingent, Wife has applied for SSD due to her ability to work limited hours. The [m]aster envisioned this benefit as helping to balance some income disparity of the parties. The Court agrees with the [m]aster in this regard. However, the Court gives greater weight to the fact that Wife is deriving a large portion of her monthly

support currently from not having to pay any housing expenses
for herself, a fact which Wife does not highlight.

Trial Ct. Op. at 6. Regarding Husband's earning capacity, the court observed,

Wife did not present a compelling argument to contradict the
[m]aster's findings of earning capacities of the parties. The
[m]aster's Report is consistent with testimony and exhibits
entered on the record in the [m]aster's Hearing. The [m]aster's
findings are also consistent with the earnings for Husband as
calculated and used for the purposes of Wife's spousal support
order through Domestic Relations. (Master's Report at 23). Wife
claimed that Husband earned cash on the side outside of his work
as a mechanic. However, Wife introduced no evidence to support
her testimony. If the [m]aster had found Wife to be credible in her
claim about Husband's cash income on the side, then the [m]aster
would have said so and adjusted Husband's earning capacity
accordingly.

Trial Ct. Op at 3-4. We conclude the court did not abuse its discretion in
adopting the portions of the Master's Report related to the earning capacities
of the parties.

Wife argues the master erred in denying her request for alimony on the
basis that she has been cohabitating with Stone. She argues they are not in a
sexual relationship, do not have joint finances, and do not share food
expenses.

A party is not entitled to alimony if she "has entered into cohabitation
with a person of the opposite sex who is not a member of the family of the
petitioner within the degrees of consanguinity." 23 Pa.C.S.A. § 3706.
"Cohabitation," in this context,

requires that two persons of the opposite sex reside together in
the manner of husband and wife, mutually assuming those rights
and duties usually attendant upon the marriage relationship.

> Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means

***Miller v. Miller***, 508 A.2d 550, 554 (Pa.Super. 1986).

The Master's Report summarizes the relevant evidence as follows:

> Wife testified that she lived with a friend when the parties separated. (N.T. 56). She also had that friend, Teresa Rissmiller, testify to that effect. (N.T. 104). Ms. Rissmiller also testified that Wife and Mark Stone own a home together, (N.T. 106), Wife and Mark Stone vacation together with Ms. Rissmiller (N.T. 107), but the relationship between Wife and Mark Stone is platonic. (N.T. 105). Finally, Miss Rissmiller testified Wife paid for improvements on the home she shares with Mark Stone (N.T. 108) and all the furnishings in the home belong to Wife. (N.T. 108).
>
> Wife's father, Sam Nelson, testified Wife and Mark Stone are financially co-dependent although just roommates. (N.T. 110). He also testified Wife and Mark Stone eat out together and vacation together. (N. T. 113).
>
> Wife testified that it was necessary for Wife to be on the Deed to the 120 North Aly property to insure her furniture and furnishings in that property, since she was not a renter. (N. T. 126). The Deed has Wife and Mark Stone as joint tenants with the right of survivorship. (N.T. 143). The mortgage is in Mark Stone's name, individually (N.T. 142) and Wife does not pay rent to Mark Stone (N.T. 146). Wife and Mark Stone do their own grocery shopping and laundry (N.T. 130). Mark Stone does most of the cleaning (N.T. 130), maintenance, yard work, and gardening. (N.T. 131).
>
> Husband presented an exhibit of photos of Wife and Mark Stone on outings together. (Ex. P. 11). Husband also elicited testimony from Wife that she was with Mark Stone at the Watering Trough around the date of separation. (N.T. 134), and that Wife and Mark Stone reconnected at Beanie's shortly before separation. (N.T. 136). Wife testified on cross Mark Stone lived continuously with her in the apartment she rented from November 2012 until 2016, when she and Mark Stone purchased 120 North Aly. (N.T. 138). Finally, Wife testified on cross that Wife consolidated marital debt of about $12,000 in Mark Stone's name (N.T. 141).

Master's Report at 5-6.

In reviewing this claim, the trial court additionally noted that Wife testified that Stone was "[b]asically putting a roof over [her] head." Trial Ct. Op. at 6 (citing R. at 139) (alteration in Trial Ct. Op.). The court noted that neither it nor the master found Wife to be credible regarding her relationship with Stone. We defer to these credibility findings and conclude there is sufficient evidence in the record to support the master's finding that Wife and Stone have been cohabitating within the meaning of the Divorce Code, thereby barring Wife from receiving alimony.

Finally, Wife claims the court discriminated against her for not having an attorney, that there was testimony left out of the transcripts, and that the "[m]aster gave Wife the impression that her mind was made up prior to testimony and that there was no interest in hearing the facts of the case." Wife's Br. at 30. These are bald, undeveloped allegations, and as such, we find them waived.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2022

- 11 -