J-A27041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KERI ANN CRAWFORD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM R. CRAWFORD III | : | |
| | : | |
| Appellant | : | No. 693 MDA 2024 |

Appeal from the Order Entered April 29, 2024
In the Court of Common Pleas of Columbia County Civil Division at
No(s): 2018-CV-0000979-DU

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:      **FILED: APRIL 3, 2025**

William R. Crawford, III ("Husband") appeals from the equitable distribution order entered in this divorce matter. He alleges the court erred in finding no marital loan existed from his mother to Husband and Wife, challenges the court's valuation of property, and argues the court erred in distributing certain assets and debts to him. We affirm.

Husband and Keri Ann Crawford ("Wife") married in December 1995. The parties separated in April 2018, and Wife filed a divorce complaint in August 2018. The parties have two children, who were adults at the time of the equitable distribution hearing. In August 2021, the trial court issued an order bifurcating the divorce from the resolution of the economic issues. The following year, the court appointed a special master for the claims for equitable distribution, alimony, counsel fees, and costs and expenses. In January 2023, the Master held a hearing.

The Master made findings of fact, including the following valuations: a 2007 GMC Yukon Denali valued at $6,374; a 2012 Kawasaki Mule valued at $6,500; a Polaris Hawkeye 4 wheeler with plow valued at $3,500; a Ferris ProCut commercial lawn mower valued at $500; one share of Bloomsburg Fair stock valued $0; and Husband's Pennsy Supply 401(k) valued $42,000. Report to the Court, filed Mar. 13, 2023, at 8-9. At the hearing, Husband had argued that his Mother had loaned money to the parties. The Master found the parties did not have a marital debt to Husband's mother. *Id.* at 12-13.

The trial court entered a final decree divorcing Husband and Wife in March 2023, and Husband filed exceptions to the Master's Report. Following a hearing, in June 2023, the court denied the exceptions.[1,2] It issued a final order of equitable distribution in April 2024, adopting the Master's Report and recommendation, approving the distribution of the marital assets as set forth in the report and recommendation, and directing the distribution of the marital assets in accordance with the report and recommendation.

Husband appealed. He raises the following issues:

> I. Did the trial court commit an error of law in determining that [Husband] failed to meet his burden of proof to establish that a marital debt existed between his mother and the marital parties?

_____

[1] Husband did not provide the trial court with a transcript of the hearing before the Master. The transcript was docketed in November 2023.

[2] Husband filed an appeal from the order denying exceptions. This Court quashed the appeal and remanded to the trial court for entry of a final order of equitable distribution, which the court entered in April 2024.

II. Did the trial court commit an error of law in determining that the special master properly valued the 2007 Yukon GMC?

III. Did the trial court commit an error of law in determining that the special master properly valued [Husband's] Pennsy Supply 401K?

IV. Did the trial court commit an error of law in determining that the special master properly valued the share of Bloomsburg Fair Stock, which was marital property?

V. Did the trial court commit an abuse of discretion in determining that the special master properly valued the personal property in [Husband's] possession and distributed marital assets accordingly?

VI. Did the trial court commit[] an abuse of discretion in determining that the distribution of the marital assets and marital debt by the special master was proper?

Husband's Br. at 5-6.

This Court reviews "a challenge to the trial court's equitable distribution scheme for an abuse of discretion." **Hess v. Hess**, 212 A.3d 520, 523 (Pa.Super. 2019). "We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence." **Id.** (quoting **Brubaker v. Brubaker**, 201 A.3d 180, 184 (Pa. Super. 2018)). A court has not abused its discretion "unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." **Id.** (quoting **Carney v. Carney**, 167 A.3d 127, 131 (Pa.Super. 2017)). When reviewing an equitable distribution award, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." **Id.**

(quoting *Hayward v. Hayward*, 868 A.2d 554, 558 (Pa.Super. 2005)). Moreover, we will not reverse a trial court's credibility determinations where they are supported by the record. *Id.* (citation omitted).

Further, "[t]he Pennsylvania Divorce Code does not specify what date marital property should be valued for purposes of equitable distribution." *Smith v. Smith*, 653 A.2d 1259, 1270 (Pa.Super. 1995). "[T]rial courts are given discretion to choose a date of valuation which best provides for 'economic justice' between the parties." *Id.* (quoting *Miller v. Miller*, 577 A.2d 205, 209 (Pa.Super. 1990)).

Husband first argues that the court erred in finding he did not establish that a marital debt existed between his mother and Husband and Wife. He argues that his mother testified she loaned Husband and Wife nearly $90,000 during the marriage, and Husband testified he and Wife received the money. He argues he presented canceled checks to prove that Wife was aware of and had made payments toward the loan. He maintains this loan was a marital debt that should have been distributed equitably.

The Master found Husband did not establish a debt existed and, even if a debt existed, Husband did not establish it was used for marital assets or to reduce marital debt:

> Husband's mother testified that she loaned nearly $100,000 to her son during the course of the marriage. Wife indicated she had no knowledge of such loan. There was testimony provided that there was a promissory note to Husband's mother, but Husband's testimony indicated that only he signed the note, and neither he nor his mother were able to produce the note at the Master's hearing.

- 4 -

The few small checks to Husband's mother which were signed by Wife could have been for various reasons, the Master does not find that they are sufficient to establish that a debt in fact existed to Husband's mother, or that, if such a debt did exist, that Wife was aware of the same and it was anything other than a personal obligation of Husband. However, the main argument against utilizing this debt or the Home Equity Line Advances as marital obligations are that any funds received by Husband have failed to have been accounted for. There is no resulting marital asset or reduction in debt from the Home Equity Line Advances or the supposed loan from Husband's mother. If in fact these debts do exist, the funds obtained therefore have been converted by Husband to his own use, and, therefore, the debts will not be considered by the Master in equitable distribution.

Report to the Court at 12-13.

The trial court similarly found Husband failed to establish a loan existed and, even if it did exist, Husband converted the money for his own use:

[Husband's] mother testified that during the marriage, she loaned her son nearly $100,000.00. [Husband] testified that there was a promissory note for the loan that only he signed. [Husband] did not produce the promissory note at the Master's Hearing. [Husband] did not account for marital assets purchased or marital debt reduced with the money from the loan. [Husband] failed to establish that a loan existed between him and his mother. [Wife] testified she had no knowledge of said loan.

[The] Trial Court affirmed the Master's conclusion that if [Husband's] mother loaned [Husband] money, he converted said money for his own use and not to benefit the marital estate; accordingly said alleged loan is not a marital debt subject to equitable distribution.

Trial Ct. Op., filed Oct. 9, 2023, at 2-3.

The trial court did not abuse its discretion. Husband failed to establish that a loan between his mother and Husband and Wife existed, or that, if such

- 5 -

a loan existed, it was used to benefit the marital estate. Husband's claim lacks merit.

Husband next argues the court erred in finding the Master properly valued the 2007 GMC Yukon Denali, Husband's Pennsy Supply 401K, and the share of Bloomsburg Fair stock. He maintains Wife gave the bluebook value of the GMC vehicle as of the time of the hearing, while Husband submitted the value as of the date of separation. He maintains the court erred in using the date of the hearing for the valuation. He maintains that "[Wife] had use of the vehicle for almost a five-year period and dissipated the asset yet is given the advantage of having used that asset[.]" Husband's Br. at 14. He maintains that "based on these facts the only equitable result is using the date of separation due to [Wife's] use of the vehicle for five (5) years post separation." *Id.* at 15.

Husband also argues it was error to value his Pennsy Supply 401K with Wife's valuation. He claims Wife valued the 401K as $42,000 and Husband valued it at $28,000, and claims he presented documentation to support his valuation.[3]

Husband further argues that the court erred in valuing the Bloomsburg Fair stock at $0. He claims the stock had value based on access to the fairgrounds, preference in tickets to shows at the Fair, and the ability to vote for directors for the Board of the Bloomsburg Fair Association. He claims the

---

[3] Before the trial court, both counsel stated that neither party presented documentation to support the amount. N.T., June 1, 2023, at 14-15.

stock should have been valued at $7,500 and should have been factored into the equitable distribution.

In valuing the assets, the Master found:

> With regard to the various vehicles and equipment, many of the values asserted by Husband were not disputed by Wife, with the exception of Wife's GMC [Yukon] Denali. The undersigned is accepting Wife's opinion of value regarding same. With regard to the one share of Bloomsburg Fair stock, there is no indication of any cash value of same so the Master will be utilizing $0.00 as its value for equitable distribution. . . . With regard to Husband's retirement account with Pennsy Supply, the Master is accepting Wife's opinion of value. . . .

Report and Recommendation at 10-11.

The trial court found the Master did not err in valuing the property, as it credited Wife's testimony and not Husband's testimony:

> [T]he Special Master committed no error by accepting Wife's opinion of value, $ 6,374.00, for the 2007 [GMC Yukon Denali]. Except for the 2007 [GMC Yukon Denali], Wife did not dispute Husband's values for the vehicles and equipment. The Special Master found Wife's opinion of value for the [GMC Yukon Denali] more credible than Husband's opinion of value. In determining issues of credibility, the Master's findings must be given the fullest consideration for it was the Master who heard the testimony and observed the demeanor of various witnesses. As to the value of the [GMC Yukon Denali], the Special Master found Wife's testimony more credible than Husband's testimony.

> The Trial Court determined that the Special Master properly valued [Husband's] Pennsy Supply 401K at $42,000.00. The Special Master found Wife's opinion on value of Husband's Pennsy Supply 401k was more credible than Husband's value. . . .

> The Trial Court determined that the Special Master committed no error in finding that Wife's one (1) share of

Bloomsburg Fair Stock had zero value. Only the parties testified about the value of said stock. The Special Master found Wife's testimony more credible than Husband's testimony. Husband failed to establish that Wife's one (1) share of Bloomsburg Fair Stock had any cash surrender value. . . .

Trial Ct. Op. at 3-7 ("('Appellant')" and ('Appellee'") omitted; citations omitted).

The trial court did not abuse its discretion. The Master made credibility determinations and made value determinations, which are supported by the record. Husband's claims fail.

Husband next contends the hearing officer erred when distributing the assets between the parties. Specifically, he claims it was error to distribute "a 2012 Kawasaki Mule, a Polaris Hawkeye 4 Wheeler and a Ferris Pro Cut Commercial Lawn Mower" to Husband. Husband's Br. at 18. Husband maintains he lives in Florida and has no use for the items.

This issue is meritless. As part of the equitable distribution scheme, Husband was awarded the assets, the value of which he does not dispute. Report to Court at Sch. B. Whether he can use the items, rather than sell the items, is irrelevant. The court did not abuse its discretion.

In his final issue, Husband argues the court erred in its distribution of the parties' marital debt. He claims, "The biggest argument against the equitable distribution is the marital debt of the parties' to [Husband's] [m]other in the amount of $118,778.68." Husband's Br. at 19. He claims the Master erred in finding this debt did not exist. He further argues that the Master did not take into consideration the debts of the parties' business and

required Husband to pay the business debts even though they were joint. He claims these obligations should have been divided equally.

As discussed above, the court did not err in finding the parties did not have a marital debt owed to Husband's mother. Further, the court valued the assets and the debts, including the business debts, and divided them equally. Report to Court at Sch. B (listing marital assets and debts, including as credit card debt for the business). Husband's claim that the business debt should have been divided equally lacks merit. The court considered the business debt to be marital debt and distributed it as part of the equitable distribution scheme. *Id.* Although the court did not distribute the business debt precisely 50/50, in the end, each party received the same amount of marital property: $146,892.45. If the business debt had not been distributed to Husband, he would have either received a different debt of equal value, or received less in assets, to reach the 50/50 distribution scheme, which he does not challenge. The court did not abuse its discretion.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/03/2025