716 A.2d 653 (1998)
Susan E. MACKALICA, Appellant,
v.
James S. MACKALICA, Appellee.
Superior Court of Pennsylvania.
Argued April 22, 1998.
Filed August 13, 1998.
*654 Dai H. Rosenblum, Butler, for appellant.
F. Arthur Rauschenberger, III, Butler, for appellee.
Before McEWEN, President Judge, and TAMILIA and KELLY, JJ.
TAMILIA, Judge:
Appellant, Susan E. Mackalica (hereinafter wife), challenges the Order of June 30, 1997, whereby the trial court modified and then adopted the master's recommendations regarding equitable distribution of the marital estate. First, wife claims the trial court erred by failing to reconsider the master's scheme of equitable distribution, which was based on an erroneous burden of proof. She argues that the presumption of marital property may be rebutted by a preponderance of the evidence, rather than clear and convincing evidence. Second, wife contends the trial court improperly refused to award her the full fair rental value of her nonmarital, real property based on a claim for child support. She maintains that contrary to the master's finding, she never conceded husband's entitlement to rental value as quid pro quo for his not filing for child support. She also argues that rental value cannot be offset against a claim for child support for which no complaint was ever filed.
Appellant and appellee, James S. Mackalica, were married on June 28, 1975 and separated on June 25, 1993 when wife left the marital residence. Their marriage produced two children, and husband has an adult daughter from a prior marriage. Husband has a tenth grade education and currently works as a heavy equipment operator, earning a gross 1994 income of $25,700. Wife has an associate's degree in industrial management and is a limited partner in her family's business, the Hilliard Family Limited Partnership. Her 1994 wage and tax statement (W-2) indicates an annual income of $11,532.
On June 2, 1993, wife filed a complaint in divorce and thereafter, a pro se petition for protection from abuse, which was withdrawn by agreement of the parties. Thereafter, wife filed a complaint for custody of the couple's two children and a petition for special relief, seeking possession of the marital *655 home.[1] The custody conciliator subsequently determined that efforts at conciliation were premature as "the right to possession of [the marital home] will influence mightily the decision as to custody." Record # 10, Conciliator's Report, 5/16/95, at 1. On May 19, 1995, the trial court issued an Order, which continued the parties' current custody "arrangement" and prohibited either party from making negative comments about the other while in the presence of the children. Husband remained in the marital home with the children.
In June of 1995, wife filed a petition for civil contempt of the custody Order of May 19th and a motion for the appointment of a master. Although the trial court dismissed the petition for civil contempt, it granted wife's petition for special relief and ordered husband to vacate the marital home. The court gave wife primary custody of the children and appointed a master.
On October 3, 1995, the master held a hearing and subsequently filed her report and recommendations. The trial court entered a decree in divorce, and the parties filed exceptions to the master's recommendations of equitable distribution. The trial court then modified and adopted the master's recommendations by Order dated June 30, 1997. Wife filed notice of this appeal.
The instant appeal concerns two pieces of real property. The first property is the marital home at 153 Beaver Dam Road, Butler County, Pennsylvania. Wife's parents previously owned the property and in 1989, they deeded it to wife. The trial court found that this property constituted wife's separate, nonmarital property, and neither party challenges this finding.[2] The second property consists of the 30 acres of land adjoining the marital residence.[3] In 1977, wife purchased the property from her brother for $2,000 (Master's Hearing, N.T., 10/3/95, at 42, 118). Apparently, the property was placed in the names of husband and wife as tenants by the entirety. However, the property had been deep mined, and the Hilliard family business possessed mineral rights over it (N.T. at 129-130).
On appeal, wife argues the trial court erred by adopting the master's report, which utilized an erroneous standard of proof in determining whether wife had shown that the 30 acres of land was nonmarital property. Generally, "[a]ll real or personal property acquired by either party during the marriage is presumed to be marital property." 23 Pa.C.S.A. § 3501, Definitions, (b) Presumption. The presumption of marital property is not affected by the name in which title is held or the form of co-ownership. Id. Nevertheless, the presumption may be overcome by a showing that the property fits within certain exceptions. Id. In this case, wife attempted to show that the 30 acres of land was not marital property because it fit within the exception for "[p]roperty acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage." 23 Pa.C.S.A. § 3501(a), General rule, (1).
At the equitable distribution hearing, wife acknowledged that the property was acquired during the marriage (N.T. at 42).[4] Thereafter, the master cited Brown v. Brown, 352 Pa.Super. 267, 507 A.2d 1223 (1986), and found that wife had not overcome the presumption of marital property by presenting clear and convincing evidence to the contrary. Record # 18, Master's Report, 11/22/95, at 5. Consequently, the master held that the 30 acres of land was marital property.
After reviewing the record, we conclude that the master applied an erroneous burden of proof. In Sutliff v. Sutliff, 518 Pa. 378, 543 A.2d 534 (1988), the Pennsylvania Supreme Court held that it is sufficient to rebut the presumption of marital property by *656 a preponderance of the evidence. Thus, the court plainly overruled this Court's decision in Brown, supra, which had previously required clear and convincing evidence. Husband maintains that the Sutliff and Brown cases apply to separate contexts. However, this assertion is without merit. Husband simply misconstrues language in the Sutliff decision. Sutliff, 543 A.2d at 538. The Sutliff court did not state that the Brown decision applied to a separate context. Rather, it indicated that its own decision in Holmes' Estate, 414 Pa. 403, 200 A.2d 745 (1964), involved a separate context, i.e. that of an individual dying intestate. Both Sutliff and Brown construe section 401(f) of the Divorce Code, which is now section 3501(b). Consequently, the presumption of marital property may be rebutted by a preponderance of the evidence.
Having said this, wife's allegation of error must still fail. Under any standard of proof, wife has simply failed to demonstrate that the 30 acres of land constituted nonmarital property. Wife maintains that the 30 acres were purchased with her separate funds contained in a Mellon Bank savings account, which was closed in 1978 (N.T. at 46, 48-49). However, she provided absolutely no documentation to support such a claim (N.T. at 42-43, 46-47). Aside from wife's testimony, there is no evidence that the savings account existed, no evidence that the funds contained in such an account constituted premarital property, and no evidence connecting the withdrawal of funds to the purchase of the 30 acres of land. Thus, the necessary tracking of private funds into property purchased with intent to hold it as individual property has not been established and is in fact belied by taking the property in joint names.
Wife also contends the trial court, based on a claim for child support, improperly refused to award her the full fair rental value of the marital home. A trial court, however, has broad discretion in determining whether to award the rental value of the marital residence. Gaydos v. Gaydos, 693 A.2d 1368, 1377 (Pa.Super.1997). While the parties' marital home is wife's separate property, wife nevertheless owes an absolute duty of support to her children, Larson v. Diveglia, 549 Pa. 118, 120-22, 700 A.2d 931, 932 (1997), and this duty is not contingent upon who owns the marital residence. We therefore cannot conclude the trial court abused its discretion by offsetting the fair rental value of the marital home against the support owed to the children. What is subject to question is the calculations based on the husband's contribution to taxes, insurance and maintenance offsetting rent and the share of rental value attributable to the children.
Wife argues that contrary to the master's finding of fact, she never conceded husband's entitlement to rental value as quid pro quo for his not filing for child support, but wife's argument is largely irrelevant. Wife chose to leave the marital residence, and two-thirds of the property's fair rental value can be attributed to the children who continued to reside therein. Also, the contribution of the husband to upkeep of the house and payment of taxes and insurance must be credited against fair rental value. The trial court consequently did not abuse its discretion by reducing the award of rental value by fifty percent.
Wife also points out that no complaint for child support was ever filed; however, she cites spousal support cases, which do not apply to the instant action. See Commonwealth ex rel. Simpson v. Simpson, 287 Pa.Super. 356, 430 A.2d 323 (1981); Jenkins v. Jenkins, 246 Pa.Super. 455, 371 A.2d 925 (1977). However, the support law applicable to any support action mandates, pursuant to Pa.R.C.P.1910.17, Support Order. Effective Date. Change of Circumstances. Copies of Order,"(a) An order of support shall be effective from the date of the filing of the complaint unless the order specifies otherwise." See Gerland v. Gerland, 703 A.2d 70 (Pa.Super.1997). Although an Order of support may only be made effective from the date of the filing of the complaint, this case does not involve a support Order, but rather, the equitable distribution of marital property. In this instance, we are dealing with setoffs or credit for a support obligation against assessment of rental value on nonmarital property. Usually when credit for a *657 support obligation becomes an issue, it involves direct payment to the child or custodial parent on the child's behalf as a result of social security or military pension entitlements in the father's name. In those situations, presumptively the father (parent) is entitled to credit, such credit being rebuttable. Miller v. Bistransky, 451 Pa.Super. 433, 679 A.2d 1300 (1996); Preston v. Preston, 435 Pa.Super. 459, 646 A.2d 1186 (1994).
The matter of credits in exchange for expenses or as quid pro quo for rental value as it relates to child support is a far more difficult matter of ascertainment, is not subject to presumption and must be proven. Since support entitlement enforceable at law is dependent on the due process requirements of petition, notice and hearing, the requirement that support may not be retroactive beyond the date of complaint is clear, and any other retroactive amount or credit must be subject to agreement and proof. Merely stating that support agreements privately entered into are enforceable does not cover the concept, and while parents may not bargain away a child's right to future support, they may fix minimum unchangeable support amounts, but may not oust the court's jurisdiction to increase support if required.
As to credits, a parent may not deplete the marital estate unnecessarily to provide for support of children in his/her custody. In Litmans v. Litmans, 449 Pa.Super. 209, 673 A.2d 382 (1996), we determined that children's bank accounts established for their benefit, pursuant to the Pennsylvania Uniform Gifts to Minor Act, 20 Pa.C.S.A. §§ 5301-5321, may not be used for support before the parents expend their own resources. See Perlberger v. Perlberger, 426 Pa.Super. 245, 626 A.2d 1186 (1993), appeal denied, 536 Pa. 628, 637 A.2d 289 (1993). Marital funds may be used to fund children's reasonable expenses and the parent whose funds were depleted may be given credit in marital distribution for this purpose. While marital assets are not apportioned in consideration of the needs and economic circumstances of the custodial parent (as those may be considered separately in a support proceeding), see Bold v. Bold, 358 Pa.Super. 7, 516 A.2d 741 (1986), this is a different and separate issue from that considered in Litmans, supra, as it applies to credit for support expenditures in relation to distribution of marital property.
Here, the distribution scheme allowed for such credit and setoff in distributing rental value of the marital property. While this is permissible, the issue is whether there was an agreement to do so (contested by the wife; found by the court), and whether the wife is entitled to credit for support payments (alleged by the wife; denied by the court). In essence, those findings by the court are subject to affirmance unless they are unsupported by the facts of record.
As to the agreement for setoff found by the court, we cannot find such a stipulation on the record. The wife's contribution, particularly to Megan whom she favored because Megan wished to live with her, cannot be determined to be of such value and consistent amount as to clearly establish a reasonable support contribution. As to her shopping on occasions, this appears to be related to her greater shopping skills rather than contributing to the family support.
At the master's hearing, the following testimony was elicited from the husband:
Q. When she separated from you in `93, did you ever file an action for support?
A. No.
Q. Why not?
A. Well, I figured, you know, if it's her house and we was living there, I guess I raise the kids and paid all the bills, then she couldn't say nothing. Which she didn't, until she came back.
Q. Did you incur any debt during the period of separation?
A. Yeah.
(N.T. at 86.)
Thereafter, the testimony indicated a number of loans ($10,000 and more) were obtained to pay for family living expenses including furnishings. While the actual expenses were not documented from this line of questioning, which was not contested by the wife, it reasonably could be determined by the court that the wife conceded there *658 was a quid pro quo of support in exchange for rental value.
Our analysis of the record after careful review, and the findings by the master and trial court, leaves us no basis upon which to reverse the trial court's findings. As detailed above, attempting to setoff child support against rental value under circumstances such as these cannot be done with precision or particularity, but must comply with the mandate of the Divorce Code to do economic justice. We believe the discretion of the trial court was properly exercised in this case. Likewise, the master simply considered wife's duty of support, even though not mandated by a court Order, in order to effectuate economic justice between the parties. See 23 Pa.C.S.A. § 3102, Legislative findings and intent, (a) Policy, (6).
Order affirmed.
KELLY, J., concurs in the result.
NOTES
[1] The trial court determined that the marital home was the wife's separate, nonmarital property.
[2] Of course, the increased value of the property was part of the marital estate.
[3] Wife testified that the 30-acre plot of land was one-sixteenth of a mile from the marital home (N.T., 10/3/95, at 42).
[4] Specifically, she stated that the parties were married in 1975 and that she purchased the property in 1977 (N.T. at 10, 42).