J-S08033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KATHLEEN F. DIXON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KEVIN G. DIXON | |
| Appellee | No. 2280 EDA 2014 |

Appeal from the Order Dated July 1, 2014
In the Court of Common Pleas of Monroe County
Domestic Relations at No(s): 7632 CIVIL 2012
997-DR-2012

BEFORE:  DONOHUE, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED FEBRUARY 18, 2015**

Kathleen F. Dixon ("Wife") appeals from the equitable distribution order of the Monroe County Court of Common Pleas.  We affirm.

On September 12, 2012, Wife filed a divorce complaint against Kevin G. Dixon ("Husband").  The trial court assigned the case to a master, who conducted a hearing on November 15, 2013.  On January 29, 2014, the Master issued a report.

The Master found, "because of the parties' employment capabilities, their relatively young ages, and the good health of each, the Master feels that nothing other than 50/50% distribution is appropriate."  The Master found the following facts:

> Defendant's Exhibit 2 deals with a Trans America Insurance and Investment Group IRA which was originally issued February 1, 1984 (approximately two (2) years

before the marriage) and categorized as a 403(b) account. The value of that policy as of January 1, 2012 was $21,468.74 and no testimony was introduced which would allow the Master to discount that number to show pre-marital contributions.

. . .

In regard to Husband's assets he had been employed as a Mall Manager and after he was terminated he liquidated approximately $24,000 of company stock to pay bills in regard to house and living expenses. He also seized approximately $5,600 from a New York Life Trust Annuity account. In addition, Husband had a 401(k) account from his employment with CBL - the company managing the Malls - which as of April 1, 2013 had a value of $94,181.95 and this is in addition to a Morgan Stanley stock account having a balance of approximately $3,792.40.

Master's Report, 1/29/2014, at 6-7. In discussing the distribution, the

Master recommended the following:

7. The last group of assets that has to be addressed are the retirement assets. Wife created a PNC retirement account via three (3) different deposits; one $55,235.22, the second $168,842.56, and the third $5,491.38. The source[s] of these deposits [were] a Rite Aid Pharmacy rollover, a CVS 401(k) and a Wells Fargo savings account. In addition Wife is also seized of a Trans America IRA valued at $21,468.74 giving her total retirement assets of $251,037.90.

Husband is seized of a "CBL" 401(k) valued at $94,181.95 and a New York Life Trust Annuity valued at $5,600 for . . . total retirement assets of $99,781.95. The combined total retirement assets of the parties are $350,819.85 and allocating this on a 50/50% basis would award $175,409.93 to each. The Master recommends that Wife transfer $75,627.98 in retirement assets to the Husband via an appropriate [Qualified Domestic Relations Order ("QDRO")] which would address the PNC retirement account; the preparation and cost of same to be equally divided between the parties.

Master's Report, 1/29/2014, at 13 ¶ 7.

Wife and Husband filed exceptions. Wife's exceptions included: (1) the Master erred in failing to place a value on the pre-marital contributions made to the Trans American Insurance and Investment Group IRA and (2) the Master erred in its valuation of the liquidated stock, which should have been valued at $30,000.00 rather than $24,000.00, and erred in finding Husband used the funds to pay marital bills. Wife's Exceptions, at ¶¶ 2, 4.

On June 30, 2014, the trial court ordered and decreed that the parties were divorced and approved the Master's report, which it incorporated into the decree. Order, 6/30/2014, at ¶¶ 1-2.

The trial court found Wife failed to present evidence or develop a record regarding the pre-marital value of the contributions made to the Trans American Insurance and Investment Group IRA. Trial Court Opinion, 6/30/2014, at 3. The trial court also found Husband sold $24,000 in stock and used the funds to pay marital bills. *Id.* The trial court, therefore, denied Wife's exceptions and directed the parties to prepare a QDRO and transfer the sum of $75,627.98 in retirement assets from Wife to Husband. *Id.*, at ¶¶ 3-4.[1]

Wife filed a timely notice of appeal. Both she and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

_____

[1] The trial court also denied Husband's exceptions, which are not at issue.

Wife raises the following issues on appeal:

1. Did [t]he [c]ourt err in sustaining the Master's findings and conclusions that the Wife transfer retirement assets to Husband via a QDRO since Husband liquidated $29,600 for which Wife received no money?

2. Did [t]he [c]ourt err in sustaining the Master's findings and conclusions that the Trans Amenica Insurance and Investment Group IRA contained no pre-marital contributions, as there was no evidence of anything other than the fact that it was pre-marital account which should have been taken into consideration by the Master and the [c]ourt?

Appellant's Brief at 3.[2]

A "trial court has broad discretion in fashioning equitable distribution awards." *Teodorski v. Teodorski*, 857 A.2d 194, 199 (Pa.Super.2004) (quoting *Anzalone v. Anzalone*, 835 A.2d 773, 785 (Pa.Super.2003)). We will overturn a trial court's equitable distribution award only if the court abused its discretion. *Id.* An abuse of discretion is found only "upon a showing of clear and convincing evidence." *Smith v. Smith*, 904 A.2d 15, 18 (Pa.Super.2006) (quoting *McCoy v. McCoy*, 888 A.2d 906, 908 (Pa.Super.2005)). In reviewing an equitable distribution scheme, we must determine:

---

[2] Although Wife's concise statement of errors complained of on appeal raised five issues, she has consolidated two issues on appeal and withdrawn two issues. Appellant's Brief at 4. Wife has waived any issue not contained in her statement of questions presented in her brief. *See Commonwealth v. Sepulvida*, 55 A.3d 1108, 1133 (Pa.2012)(issue waived when not raised in statement of questions presented).

> [W]hether the trial court, by misapplication of the law or failure to follow proper legal procedure, abused its discretion. Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court therefrom, against the provisions of 23 P.S. § 402(d) [now 23 Pa.C.S. § 3502(a)] and the avowed objectives of the Divorce Code, that is, to effectuate economic justice between the parties and insure a fair and just determination of their property rights.

*Teodorski*, 857 A.2d at 199 (quoting *Anzalone*, 835 A.2d at 785). Further, the master, as fact-finder, "is in the best position to assess credibility of witnesses and we do not disturb credibility determinations on appeal." *Busse v. Busse*, 921 A.2d 1248, 1255 (Pa.Super.2007) (citing *Doherty v. Doherty*, 859 A.2d 811, 812–813 (Pa.Super.2004)).

The Divorce Code defines marital property as "all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired pursuant to paragraphs (1) and (3) as measured and determined under subsection (a.1)." 23 Pa.C.S. § 3501. Paragraph (1) relates to "[p]roperty acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage" and paragraph (3) relates to "[p]roperty acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property." The increase in value of pre-marital assets is marital property. *Anderson v. Anderson*, 822 A.2d 824, 828 (Pa.Super.2003) (quoting *Smith v. Smith*, 653 A.2d 1259, 1265 (Pa.Super.1995)). There is a presumption that property acquired after marriage is marital, which can be rebutted by a

preponderance of the evidence. 23 Pa.C.S. § 3501(b); *Mackalica v. Mackalica*, 716 A.2d 653, 655-56 (Pa.Super.1998).

Further, "[i]f a spouse uses marital funds to satisfy the parties' joint obligations, this constitutes a disposition in good faith and the spouse does not have to account for such marital funds. These marital funds are properly excluded from the marital estate." *Smith*, 653 A.2d at 1270. If, however, the funds are used for non-marital obligations, the funds constitute marital property. *Id.*

Wife's first issue claims the trial court erred when it adopted the Master's finding that Husband liquidated only $24,000.00 and further erred in adopting the finding that Husband used the liquidated funds for household expenses. Appellant's Brief at 5-7.

The trial court found: "During the [Master's] hearing, Husband testified that he sold $24,000 of stock which was used to pay for living expenses. Wife resided in the marital home until the spring or summer of 2012.[3] Therefore, the Master could have concluded that the liquidated stock

---

[3] Wife gave inconsistent testimony regarding when she moved from the marital residence. Wife testified she moved from the marital home in January 2013. N.T., 11/15/2013, at 17. She subsequently stated she resided outside the home from the spring or summer of 2012. N.T. 11/15/2013, at 28. She stated that after the parties separated in August 2011, "I was still residing at the home most of the time. When I did leave, I was staying with friends of mine. When my son would be home -- I would try to be home when my son was there." *Id.*, at 15.

was used for marital bills. We give the [Master's] credibility determinations great weight since it was the Master[] who heard and observed the witnesses." Opinion, 7/1/2014, at 3 (internal citations omitted).

Husband testified he sold $24,000.00 of company stock. N.T., 11/15/2013, at 38, 55. From July 2010 through July 2012, he received approximately $550.00 per week in unemployment compensation. N.T., 11/15/2013, at 37, 56. Husband testified he used his unemployment compensation to pay the mortgage on the house and the funds received from liquidating the stock for his living expenses. *Id.*, at 27. On cross-examination he testified:

> A. To be honest with you to go back and look, I don't know. Did I use it for the golf? Partially, yes. Did I use it for meals? Yes, for my son and I. With his mother not being home as often, we would go out to dinner because I'm a horrible cook, I don't like to cook, don't cook well. So yes. Did I use that for that? Yes, I did. I also used it to pay bills when needed.
>
> Q. What bills did you pay?
>
> A. At end of the year with the mortgage, not mortgage, heating, electric, my share of the phone bill.
>
> Q. Do you have those bills that you paid?
>
> A. I don't have them with me.

*Id.* at 55. Wife testified that she paid all living expenses until September 2012, when the parties' son went to college, after which she requested that Husband pay half of the expenses. *Id.*, at 16.

Although Husband did not use all liquidated funds for marital expenses, he testified he used his unemployment compensation for the mortgage payment and the liquidated assets for the payment of living expenses. He made these payments while Wife continued to reside at the home. The Master was entitled to credit this testimony. *Busse*, 921 A.2d at 1255. Because Husband used the funds to pay joint obligations, the trial court acted within its discretion in finding the liquidated stock was not part of the marital property to be divided.[4] *Smith*, 653 A.2d at 1270.

Wife also alleges the Master failed to include the additional $5,600.00 from the New York Life Trust with Mainstay Annuity account as marital property liquidated by Husband. Appellant's Brief at 6. Husband testified that he used these funds for living expenses. N.T., 11/15/2013. The Master, however, included the funds in calculating Husband's retirement funds, which it divided equally. Master's Report, 1/29/2014, at 13 ¶ 7. Because the Master included the funds as part of the marital property, Wife's claim is moot.

---

[4] Neither Wife nor Husband presented evidence establishing the payment of bills. Wife had a box of bills, but did not go through them before or during the hearing. N.T., 11/15/2013, at 64-65. The Master admitted the bills and stated he would determine the amount of weight he would place on the bills. *Id.*, at 65. Further, at the time of the hearing, the marital house was in foreclosure. *Id.* at 5. It is unclear, however, when the foreclosure process began.

Wife's second issue maintains the trial court erred in sustaining the Master's findings that the Trans American Insurance and Investment Group IRA contained no pre-marital contributions. The trial court found Wife failed to present evidence or develop a record regarding the pre-marital value of the contributions made to the Trans American Insurance and Investment Group IRA. Trial Court Opinion, 6/30/2014, at 3. Wife had the burden of establishing the portion of the IRA that constituted pre-marital contributions. *See* 23 Pa.C.S. § 3501(b); *Mackalica*, 716 A.2d at 655-56. She failed to present any evidence. Accordingly, the trial court acted within its discretion in sustaining the Master's finding that the IRA contained no pre-marital contributions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/18/2015