J-A22017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CAROLYN T. CAMPER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADLEY S. WERNER | : | |
| | : | No. 2726 EDA 2018 |
| Appellant | : | |

Appeal from the Order Entered August 21, 2018
In the Court of Common Pleas of Bucks County
Family Division at No(s):  2013-60988

BEFORE:   MURRAY, J., STRASSBURGER, J.[*] and PELLEGRINI, J.[*]

MEMORANDUM BY STRASSBURGER, J.:          **FILED DECEMBER 03, 2019**

Bradley S. Werner (Husband) appeals from the order entered August 21, 2018, which decreed that he and Carolyn T. Camper (Wife) are divorced and ordered equitable distribution of the marital property.  We vacate the order and remand for proceedings consistent with this memorandum.

Husband and Wife were married in 2005 and separated in 2013.  This was the second marriage for Wife, age 56.  Wife has two adult children from her prior marriage. Husband is 58 years old and has had four previous marriages.  Prior to his marriage to Wife, Husband formed Werner Athletic Management, LLC (WAM) and Pennsbury Racquet and Athletic Club, LLC

_____

[*] Retired Senior Judge assigned to the Superior Court.

(PRAC) in anticipation of purchasing a pre-existing tennis club, Pennsbury Racquet Club (tennis club). Husband, through PRAC, purchased the tennis club approximately 16 months prior to marrying Wife.[1]

Wife filed a complaint in divorce on June 19, 2013,[2] seeking equitable distribution of the parties' marital assets, alimony, alimony *pendente lite* (APL), counsel fees, costs, and expenses. On August 1, 2014, an interim order of court (interim support order) was entered directing Husband to pay Wife $5,000 per month in APL.[3] Order, 8/1/2014. In addition to directing Husband to pay Wife APL, the interim support order also set forth Husband's and Wife's individual obligations with respect to three jointly-owned properties.[4] ***Id.***

_____

[1] While still married to her first husband, Wife contributed $110,000 towards the acquisition of PRAC and WAM. In exchange, Wife acquired a 3.57% ownership stake in PRAC. Later, Husband gifted Wife a 1% ownership share in WAM.

[2] The parties stipulated that, for equitable distribution purposes, June 19, 2013, was also the date of separation.

[3] The interim support order was later terminated.

[4] By way of further background, Husband and Wife jointly owned and resided together in the marital residence (Yardley Road property) during their marriage. Additionally, the parties jointly owned a rental property (Blough Court property) and a vacation home (Beach Avenue property). Following the parties' separation, Wife remained in the Yardley Road property and paid all real estate carrying costs prior to its sale. Husband resided in the Blough Court property with his mother and sister from the date of separation through November 2014, when Husband decided to reside elsewhere. His mother and sister remained in the home until it sold in 2018. In addition to paying the carrying costs for that property, Husband was also directed to pay all costs for the Beach Avenue property. With respect to this property, the interim support

On March 22, 2017, a master's hearing was held before Roger E. Cullen, Esquire (the Master), to address the issues of equitable distribution, alimony, and counsel fees. At the conclusion of the hearing, the Master entered a master's report recommending, *inter alia*, that the marital estate be distributed 60% to Wife and 40% to Husband.[5]  Report of the Master, 3/22/2017, at 7 (unnumbered). Pertinent to this appeal, the Master made recommendations regarding the proposed distribution of several assets, including: (1) the increase in value of PRAC and WAM during the parties' marriage; (2) Wife's irrevocable trust, gifted to her by her mother during the parties' marriage (the Trust);[6] (3) a Merrill Lynch investment account titled in the names of both Husband and Wife as joint tenants with a right of survivorship (Merrill Lynch account); and (4) the proceeds from the sale of the parties' three properties.  *Id.* at 3-7.

---

order preserved Husband's "right to claim any credits he may have at the time of equitable distribution." Interim Support Order, 8/1/2014. Following the sale of all three properties, the proceeds were held in escrow pending equitable distribution.

[5] The Master also recommended that Wife's claims for alimony and counsel fees be denied. Report of the Master, 3/22/2017, at 7 (unnumbered).

[6] Wife's mother established the Trust for Wife on December 21, 2012 by depositing $10.00 into the Trust.  That same day, Wife's mother made a second deposit, this time in the amount of $700,000.  According to Wife's inventory, as of the date of separation, the value of the Trust was $800,000. Wife's Inventory, 5/3/2016, at 5 (unnumbered).

Husband timely filed a motion for a hearing *de novo*, asserting that he took "exceptions to the recommendation of" the Master. Motion for a Hearing *De Novo*, 5/5/2017. Thereafter, the trial court presided over an equitable distribution hearing, which spanned three days. Upon the conclusion of testimony and the submission of proposed findings of fact and conclusions of law by the parties, the trial court issued an order, in which it concluded that "an equal split of the marital estate is appropriate." Order and Decree, 8/21/2018.[7] In relevant part, the trial court determined that the increase in value of PRAC and WAM during the marital coverture, which constituted marital property, was $2,300,000. *Id.* Additionally, the court found that "Husband's personal use of and/or mismanagement of PRAC/WAM [p]rofits/[a]ssets" post-separation totaled $400,000, which the court determined was subject to equitable distribution. *Id.* Neither the increase in value of the Trust nor the Merrill Lynch account was listed as a marital asset to be distributed. Additionally, neither party received any credits for the carrying costs the parties' were directed to pay on their three jointly-owned properties.

Husband timely filed a notice of appeal, and both Husband and the trial court complied with Pa.R.A.P. 1925. On appeal, Husband presents the

_____

[7] Simultaneous to the issuance of the equitable distribution order, the trial court entered a decree in divorce.

following issues for our consideration, which we have reordered for ease of disposition.

I. Whether the [trial] court erred by utilizing the date of acquisition and/or the value as of the date of acquisition of the tennis club by [PRAC] in valuing the increase in value of this non-marital asset[.]

II. Whether the [trial] court erred by determining that the [marital] asset portion [of PRAC and WAC was] valued at $2,300,00.00[.]

III. Whether the [trial] court erred by determining that Husband's personal usage and/or mismanagement of [PRAC and WAC] profits/assets in the amount of $400,000[] constituted marital assets/marital portion of the assets subject to equitable distribution[.]

IV. Whether the [trial] court erred by failing to consider the increase in value of [the Trust] through the date of separation as a marital asset subject to equitable distribution[.]

V. Whether the [trial] court erred by failing to consider [the] Merrill Lynch [account as] a marital asset subject to equitable distribution[.]

VI. Whether the [trial] court erred by failing to consider and/or credit Husband for the payments he made pertaining to the jointly owned [Beach Avenue] property[.]

Husband's Brief at 6-7 (trial court answers and unnecessary capitalization omitted). At the outset, we note our standard of review.

It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. [In addition,] when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate [economic] justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. [Further,] the finder of

fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Lee v. Lee*, 978 A.2d 380, 382-83 (Pa. Super. 2009) (quoting *Anzalone v. Anzalone*, 835 A.2d 773, 780 (Pa. Super. 2003)).  Moreover,

> [w]e do not evaluate the propriety of the distribution order upon our agreement with the court['s] actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the [23 Pa.C.S. § 3502(a)] factors [for consideration in awarding equitable distribution]. If we fail to find an abuse of discretion, the [o]rder must stand.  The trial court has the authority to divide the award as the equities presented in the particular case may require.

*Childress v. Bogosian*, 12 A.3d 448, 462 (Pa. Super. 2011) (internal citations and quotations omitted).

### I.    PRAC and WAM

With respect to PRAC and WAM, Husband contends the trial court: (1) incorrectly utilized the date of acquisition as opposed to the date of the parties' marriage to determine the marital portion of these assets; (2) failed to consider the tax implications and costs associated with the sale, transfer, or liquidation of PRAC and WAM when formulating its valuation; and (3) erred in determining that Husband's alleged mismanagement and personal usage of the PRAC and WAM assets and profits entitled Wife to an additional $200,000. Husband's Brief at 14-37.

We address first Husband's complaint that the trial court utilized the incorrect start date to determine the marital portion of PRAC and WAM.

Husband's Brief 23-27. We note, however, that Husband did not raise this issue in his concise statement. *See* Concise Statement, 10/10/2018. It is well-settled that "[i]ssues not included in a [concise] statement or fairly suggested by the issue(s) stated are deemed waived." *B.G. Balmer & Co. v. Frank Crystal & Co., Inc.*, 148 A.3d 454, 467 (Pa. Super. 2016).

> Issue preservation is foundational to proper appellate review. Our rules of appellate procedure mandate that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). By requiring that an issue be considered waived if raised for the first time on appeal, our courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue.

*In re F.C. III*, 2 A.3d 1201, 1211–12 (Pa. 2010). Our review of Husband's concise statement reveals that he neither raised this issue nor was the issue fairly suggested by the issues stated. Thus, this issue is waived.

Next, we address Husband's claim that the trial court erred by failing to consider the tax ramifications and the expenses associated with the sale, transfer, or liquidation of the assets in setting the value of the marital portion of PRAC and WAM at $2,300,000. Husband's Brief at 14. Specifically, Husband contends the trial court

> attributed an equitable value of $2,300,000[] to the asset, subject to a 50/50 distribution, with the asset to be sold by a special monitor appointed by the [trial court] if Husband failed to make a cash payment to Wife of $1,150,000[] within [180] days of the date of the [o]rder. In fashioning this [o]rder, the [trial c]ourt wholly disregard[ed] competent and probative evidence offered by Husband's expert witness, Craig Diehl, Esquire, and PRAC's accountant, James Colitsas, C.P.A., setting forth and explaining the tax repercussions which would arise out of the sale of PRAC and the necessary expenses which would be incurred to achieve

- 7 -

the highest and best sale value. This failure by the [trial c]ourt to consider the "cost" which Husband would have to incur to access the cash value of his largest asset resulted in an award significantly more financially beneficial to Wife than Husband than the 50/50 division of the asset contemplated by the [c]ourt.

*Id.* at 14-15.

In response, the trial court stated that it "found Wife's testimony and Wife's witnesses to be more credible than Husband's testimony and Husband's witness[;]" more specifically, the court found the valuation of PRAC and WAM by Wife's expert "was more credible than Husband's expert[.]" Trial Court Opinion, 11/2/2018, at 5. The trial court noted that the ultimate valuation the court chose "fell between the valuations of both side's experts, but fell closer to Wife's expert's evaluation"[8] because the trial court "found [that expert's] testimony was more credible." *Id.* However, the trial court did not provide any analysis of how it arrived at the $2,300,000 valuation.

> In valuing marital assets, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. However, this Court has consistently held that, in determining the value of marital property, the court is free to accept all, part or

---

[8] Notably, while the trial court chose a valuation that fell between the valuations of both experts, the experts did not use the same timeframe to calculate their respective valuations. Specifically, Husband's expert valued PRAC and WAM as of the date of separation. Wife's expert valued the businesses as of December 31, 2014, approximately 18 months after the parties' separation. Wife's expert explained that it used the December 31st date because the valuation at that time was less than the value of businesses at the date of separation, pursuant to 23 Pa.C.S. § 3501(a.1), as set forth in more detail *infra*. **See** N.T., 5/24/2018, at 38-40.

none of the evidence as to the true and correct value of the property.

*Carney v. Carney*, 167 A.3d 127, 131–32 (Pa. Super. 2017) (citations, quotation marks, and brackets omitted). The pertinent portion of section 3502 provides the following.

> Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:
>
> * * *
>
> (10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.
>
> (10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

23 Pa.C.S. §3502 (a)(10.1)-(10.2). Additionally, "this Court [has] clearly held [] that the tax ramifications and expenses associated with the sale of a marital asset is a relevant consideration whether a sale is likely or not." *Carney*, 167 A.3d at 134.

Here, the trial court valued the marital portion of PRAC and WAM at $2,300,000. The court acknowledged that this valuation was not the valuation provided to the court by either of the parties' experts, but was closer to the figures provided by Wife. Thus, instead of accepting the valuation offered by

Husband's expert, or alternatively, Wife's expert, the trial court formulated its own valuation. Although the trial court is permitted to do so based upon evidence presented, notably absent from the trial court's determination is any analysis of how the court arrived at a $2,300,000 valuation for PRAC and WAM. Furthermore, the trial court made no mention about whether it considered the statutory factors in section 3502.

For the foregoing reasons, we reverse the portion of the trial court's order valuing the marital portion of PRAC and WAM at $2,300,000. Upon remand, we direct the trial court to address the aforementioned tax and cost of sale consequences and, if necessary, set forth a new valuation based on the same. Regardless of whether the trial court accepts the valuation offered by either expert, or again formulates its own valuation, the trial court shall set forth reasons on the record to support the chosen valuation.

In his third issue, Husband contends that the trial court abused its discretion and/or committed an error of law when it found that, after the parties had separated, Husband had mismanaged PRAC and WAM profits and assets[9] in the amount of $400,000, and that this misuse of funds was subject to equitable distribution, entitling Wife to $200,000. Husband's Brief at 27.

---

[9] Husband also argues, in the alternative, that even if Husband's alleged misuse of PRAC and WAM assets and profits were relevant to equitable distribution, "there was utterly no competent evidence before the [trial c]ourt to support any finding of malfeasance, only speculation and conjecture" from Wife's expert. Husband's Brief at 34-37.

Specifically, Husband asserts that PRAC and WAM are non-marital assets and the understanding of the parties was that the marital portion of PRAC and WAM was to be measured from the date of marriage through the date of separation. *Id.* at 28-29. Thus, Husband argues that any dissipation of these assets post-separation was inconsequential in determining the increase in value that was subject to distribution. *Id.*

> As used in this chapter, "marital property" means all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired pursuant to paragraphs (1) and (3) as measured and determined under subsection (a.1).
>
> (1) Property acquired prior to marriage[.]
>
> * * *
>
> **(a.1) Measuring and determining the increase in value of nonmarital property.--**The increase in value of any nonmarital property acquired pursuant to subsection (a)(1) and (3) shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase.

23 Pa.C.S. § 3501(a)(1) and (a.1).

> Factors which are relevant to the equitable division of marital property include the following:
>
> * * *
>
> (7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

23 Pa.C.S. § 3502 (a)(7).

The trial court explained that it found the testimony of Wife's expert regarding "Husband's personal use of and/or mismanagement of PRAC and WAM [p]rofits and [a]ssets" to be "compelling." Trial Court Opinion, 11/2/2018, at 5. Recounting the testimony of Wife's expert, the trial court stated that "after hearing all of the testimony, [the trial court] had no doubt that Husband was mismanaging the business's funds[.]"[10] *Id.* at 6. Aside from concluding as such, the trial court did not address why the mismanagement of funds following the date of separation was subject to division under equitable distribution.

In her brief to this Court, Wife supports the determination of the trial court, asserting that the evidence presented firmly established that Husband was pilfering funds from PRAC and "[i]f those profits remained in PRAC, the marital value of PRAC, whether valued at [the] date of separation <u>or</u> the date of distribution, [pursuant to section 3501(a.1),] would have been significantly greater." Wife's Brief at 10-11 (emphasis in original). Wife continues:

> As the purpose of equitable distribution is to achieve a fair and just division of the assets in the instant matter, the only way that could be accomplished was to include in PRAC/WAM's value the profits Husband funneled into his own pocket tax[-]free. Those profits should have remained with PRAC/WAM, increasing the overall marital value subject to equitable distribution.

_____

[10] The trial court noted that it "did not find the mismanagement amount to be over $600,000.00 as asserted by Wife. Instead, after analyzing the evidence, [the trial court] determined that at least $400,000.[] of the business funds were used solely for Husband's personal expenses." *Id.* at 6.

*Id.* at 12-13.

Additionally, both Husband and Wife cite the same statement made by the trial court at the equitable distribution hearing to support their respective positions; nevertheless, they each interpret the trial court's statement differently. Specifically, at the hearing, the trial court stated that its concern was

> what was the value on the date of the marriage, what was the value as of the date of separation[.] That's the marital portion of it. That's what [the trial court] can equitably distribute. If, in fact, there's a claim that [Husband] has decreased the value since then, [] if that impacts how we can divide things up, that may be a factor, but quite frankly, if he's wasted the value, or increased the value after separation, that's going to come out of him.

N.T., 8/25/2017, at 80-81. Husband contends the trial court's statement reinforces that the trial court was only concerned with the valuation of the assets over the lifetime of the marriage and therefore, Husband's post-separation actions were irrelevant. Husband's Brief at 28-29. Conversely, Wife interprets the statement as the trial court providing notice to the parties that it would consider "Husband's dissipation as a factor in dividing the marital estate" and did in fact do so. Wife's Brief at 13.

Here, there appears to be no dispute that, at the time of the equitable distribution hearing, the parties and the trial court were in agreement that PRAC and WAM were non-marital assets. *See* N.T., 8/25/2017, at 77 (trial court stating that "the issue … is what was the value on the date of the marriage[ and what is] the value as of the date of separation."); *Id.* at 86-87

- 13 -

(Wife's counsel clarifying Wife's position that "the equitable distribution as to PRAC and WAM … is that it is an increase in value argument, not that it was a marital asset from day one."). Thus, the trial court was charged with determining only the increase in value of PRAC and WAM over the lifetime of the parties' marriage. While the trial court was permitted, as Wife noted, to measure the increase in valuation from the date of marriage to final separation **or** a date closer to the equitable distribution hearing,[11] whichever date resulted in a lesser increase, it is clear from the record that the trial court chose to measure the increase utilizing the date of separation. ***See*** N.T., 8/25/2017, at 76 ("[T]he issue [is] whether [PRAC and WAM have] increased in value, and if so, what the increase was in value from the date of the marriage to the date of separation[.] That's the issue I have to decide."); ***Id.*** at 77 ("[T]he issue is what was the value on the date of the marriage [and] what[ is] the value as of the date of separation."). Moreover, the trial court acknowledged that while it did not accept either party's valuation of PRAC and WAM, the valuation chosen by the court "fell between the valuations of both side's experts[.]" Trial Court Opinion, 11/2/2018, at 5. As noted *supra*, Husband's expert valued PRAC and WAM as of the date of separation, while

_____

[11] Clearly Husband's alleged dissipation of the marital assets post-separation would be an appropriate factor for the trial court to consider if the court determined that these assets should be valued utilizing a post-separation date, *i.e.,* a date close to the equitable distribution hearing. ***See*** 23 Pa.C.S. § 3502 (a.1), ***supra***.

Wife's expert valued the businesses as of December 31, 2014, approximately 18 months after the parties' separation. Thus, it appears that the trial court determined it was more appropriate to value PRAC and WAM as of the date of separation or close to the date of separation. Despite this, for reasons not elucidated in the record, the trial court found Husband's misappropriation of assets, which everyone concedes happened post separation, in the amount of $400,000, was subject to distribution.

As with the previous claim, this Court's review of this issue is made even more challenging by the trial court's failure to provide reasoning for its decision on the record, in its subsequent equitable distribution order, or its opinion to this Court. Put simply, based on the foregoing and the lack of analysis by the trial court, it is unclear why Husband's post-separation actions were pertinent to the equitable distribution scheme when the focus was on the businesses' growth from the date of the marriage to the date of separation. Because we cannot find any reasonable basis as to why Husband's post-separation actions in relation to these non-marital assets affect the equitable distribution of the marital portion of these businesses, we agree with Husband that the trial court committed reversible error and therefore, we vacate the portion of the trial court's equitable distribution order awarding Wife $200,000.

## II. The Trust

Husband next "asserts that [the trial c]ourt's refusal to recognize the increase in value of [the Trust] from the date of the gift through the date of separation as a marital asset subject to equitable distribution constituted an error of law/abuse of discretion warranting reversal." Husband's Brief at 37. In addressing this claim, the trial court stated that it

> believed that the monies included in the trust were a gift to Wife from her mother, and therefore did not qualify as marital assets. Therefore, while [the trial court] considered the $800,000[] trust fund in [the trial court's] equitable distribution calculations as an asset solely belonging to Wife, [the trial court] did not find that it would be appropriate for Husband to receive half of the amount of the trust, as it was not marital property.

Trial Court Opinion, 11/2/2018, at 6.

On appeal, Husband clarifies that he "never disputed that the establishment of the Trust was a gift from Wife's mother to Wife and thus non-marital property; Husband's contention to the [trial court] was that the increase in the value of the [Trust] from [the date the trust was established,] December 21, 2012, through [the date of separation,] June 19, 2013, constituted marital property subject to equitable distribution." Husband's Brief at 37-38. We agree.

In **Smith v. Smith**, 653 A.2d 1259 (Pa. Super. 1995), this Court considered an analogous situation. "During the parties' marriage[, Smith] received numerous gifts of stock from her father, as well as a sizable inheritance from her mother comprised of stocks and money valued at approximately $700,000.[]" **Id.** at 1265. The **Smith** Court concluded that "[a]lthough these gifts and inheritance are not marital property, the increase

- 16 -

in the value thereof during marriage was properly distributed as 'marital property'" pursuant to section 3501.[12] *Id.*

Similarly, in this case, during the parties' marriage, Wife was gifted the Trust from her Mother. Thus, while the entirety of the Trust is not marital property, the trial court should have recognized that the increase in value of the Trust during the marital coverture constituted marital property. However, in its distribution order, the trial court omitted any mention of the Trust when it listed the "marital assets (or marital portion of the assets)" subject to distribution. *See* Order, 8/21/2018. Further, in its opinion to this Court, the trial court considered only that the Trust constituted a gift and thus, was non-marital property. Trial Court Opinion, 11/2/2018, at 6. The court did not address the increase in value of the Trust, which, for the reasons cited *supra*, should have been considered a marital asset subject to distribution. Because it was error not to identify the marital portion of the Trust, we reverse and remand for such a determination.

### III. Merrill Lynch Account

Next, "Husband asserts that [the trial court's] failure to identify an $81,000 jointly titled investment account [(Merrill Lynch account)] as a marital asset subject to equitable distribution constituted an error of

---

[12] Pursuant to 23 Pa.C.S. 3501(a), the increase in value of non-marital "[p]roperty acquired by gift, except between spouses," over the course of the marital coverture is considered marital property subject to equitable distribution.

law/abuse of discretion warranting reversal." Husband's Brief at 40. By way of further background, the Merrill Lynch account at issue was owned solely by Wife prior to the marriage. At some point during the marriage, the account was re-titled in the names of both Husband and Wife as joint tenants with the right of survivorship (JTWROS). In its opinion, the trial court explained that because "the account belonged solely to Wife prior to their marriage, and Husband's name was only added to the account during the marriage and prior to the date of separation[,]" the account was not a marital asset, and thus, Husband was entitled only "to half of the increase in the value of the account[.]" Trial Court Opinion, 11/2/2018, at 6.

Husband concedes that the Merrill Lynch account belonged solely to Wife prior to the marriage. Nonetheless, Husband asserts that re-titling the account in both names as JTWROS constituted a gift from Wife to Husband, effectively changing the asset from non-marital to marital. Husband's Brief at 43-44. Additionally, Husband notes that "Wife unequivocally admitted joint ownership with Husband of the [Merrill Lynch] account in both her [i]nventory and her [] testimony, and there was nothing contradictory in the record before the [trial c]ourt which could support any other factual conclusion than it was mar[ita]l property." *Id.* at 43.

> Generally, "[a]ll real or personal property acquired by either party during the marriage is presumed to be marital property." 23 Pa.C.S.A. § 3501[(b)]. The presumption of marital property is not affected by the name in which title is held or the form of co-ownership. Nevertheless, the presumption may be overcome by

- 18 -

[showing that, by a preponderance of the evidence,] the property fits within certain exceptions.

*Mackalica v. Mackalica*, 716 A.2d 653, 655 (Pa. Super. 1998) (citation omitted).

In this case, in her inventory, Wife listed the Merrill Lynch account as a marital asset. *See* Wife's Inventory, 5/3/2016, at 4 (unnumbered). Additionally, at the hearing, Wife answered in the affirmative when asked if, at the date of separation, the parties "both owned" the account. N.T., 2/20/2018, at 112-13.

> Admissions … contained in pleadings, stipulations, and the like, are usually termed 'judicial admissions' and as such cannot later be contradicted by the party who has made them. Such pleadings are conclusive in the cause of action in which they are filed. Where there exists in the record a basis for the possibility that an averment is true, the trial court abuses its discretion if it ignores the admission.

*Rizzo v. Haines*, 555 A.2d 58, 69 (Pa. 1989) (citations and quotation marks omitted). Thus, it appears the record evidence in this case concerning the parties' joint ownership of the Merrill Lynch account is uncontroverted. Nonetheless, the trial court, based solely on the fact that the account belonged to only Wife before the marriage, determined that only the increase in value of the account during the marriage was marital property subject to equitable distribution. This conclusion amounts to an error of law.

We find instructive this Court's decision in *Brown v. Brown*, 507 A.2d 1223 (Pa. Super. 1986), *overruled on other grounds by Gilliland v. Gilliland*, 751 A.2d 1169 (Pa. Super. 2000). In *Brown*, this Court addressed whether

real property held individually by one spouse prior to marriage and later re-titled in both parties' names subsequent to the marriage becomes marital property subject to equitable distribution. In **Brown**, the special master determined the real property at issue constituted a gift

> to the marital estate and that the entire value of the residence was subject to equitable distribution. The [trial] court held *contra*, ruling that the transfer of title into joint names did not constitute a gift to the marital estate, and therefore, [the husband] was entitled to share only in the property's increase in value during the marriage.

*Id.* at 1224.

The husband appealed. Upon review, the **Brown** Court held that, because the wife "transferred her individually held interest in property to a tenancy by the entireties by a deed[,]" the presumption was that the wife's conveyance constituted a gift of the marital estate. *Id.* Specifically, the Court determined that when

> property or an account is placed in the names of a husband and wife, a gift, and the creation of an estate by the entireties is presumed even though the funds used to acquire the property or to establish the account were exclusively those of [one spouse.]

*Id.* (citation and quotation marks omitted). Additionally, the **Brown** Court found that the wife failed to set forth sufficient evidence to overcome the presumption that the property was a marital asset.

Similarly, in this case, after the parties' marriage, the Merrill Lynch account, once solely in Wife's name, was re-titled in the names of both Husband and Wife as JTWROS. Based upon our holding in **Brown**, re-titling

the account in both names created a presumption that a valid gift had been made to the marital estate, and the account was now considered a marital asset. *See also Madden v. Madden,* 486 A.2d 401, 404 (Pa. Super. 1984) ("[W]hen [the husband] cashed in [] bonds [originally acquired by the husband as a gift from his mother] and used the proceeds to purchase *new* bonds held in the joint names of [the husband and wife,] the bonds lost their 'gift' status and took on the status of property by the entireties.") (emphasis in original). Thus, the trial court erred in determining that the account could not be considered a marital asset because the account was once listed in only Wife's name prior to marriage.

However, our analysis does not end there. Wife was entitled to rebut the presumption that a jointly-titled account was not a marital asset by introducing evidence of the same. Upon review of the record, at the time of the equitable distribution hearing, there appeared to be no dispute that the Merrill Lynch account was a marital asset. Indeed, Wife confirmed the account was jointly held in the parties' names at the hearing, and further acknowledged that the account was a marital asset by listing it as such on her inventory. While Wife attempts to dispute the account's designation as a marital asset for the first time on appeal, she does not direct this Court to where she did the same below. Thus, Wife has failed to meet her burden. For the foregoing reasons, we agree with Husband that the trial court abused its

discretion by failing to identify the Merrill Lynch account as a marital asset subject to equitable distribution.

### IV. Beach Avenue Property

In his final claim, Husband argues the trial court's "failure to equally apportion the post-separation debt which he solely incurred paying the carry costs on the [Beach Avenue property], was erroneous." Husband's Brief at 44. As set forth in more detail *supra*, pursuant to the August 1, 2014 interim support order, Wife was ordered to pay the costs attendant to the Yardley Road property, in which she resided exclusively post-separation. In turn, Husband received exclusive possession of the Blough Court property, and he was required to pay the carrying costs for that property. The record reflects that Husband briefly resided in the Blough Court property but later moved, and instead, Husband's mother and sister resided in the property. In addition to the Blough Court property, the interim support order mandated that Husband pay all carrying costs for the Beach Avenue property.[13] With respect to the Beach Avenue property, the order preserved Husband's "right to claim any credits he may have at the time of equitable distribution." Order, 8/1/2014.

---

[13] At the hearing, Husband testified that despite paying the costs on the Beach Avenue property, he rarely used the property, and it was mainly Wife who used the property. N.T., 8/25/2017, at 165. Wife asserts that while she may have utilized the Beach Avenue property more than Husband, she did not petition for or receive exclusive possession of the Beach Avenue property. Wife's Brief at 22.

In its opinion to this Court, the trial court found that Husband was not entitled to a credit for payments for the Beach Avenue property, "despite Wife's near exclusive continued use of the [Beach Avenue] property, because the amount was offset by Husband's exclusive use of the [Blough Court] property by him, his mother and his sister." Trial Court Opinion, 11/2/2018, at 6. Husband argues that, while the trial court "correctly recognized that Husband had exclusive post-separation use of the [Blough Court property], the [trial c]ourt's analysis failed to take into consideration that Wife had exclusive possession (and continued to reside) at the [Yardley Road property] post-separation." Husband's Brief at 45-46.

> Accordingly, both Husband and Wife were provided exclusive possession of the home they were residing in, and were responsible for paying the carrying costs thereof through the respective sale. Any "offset" afforded [to] Husband for his exclusive use and payment of [the Blough Court property] was from Wife's exclusive use and payment of [the Yardley Road property], as was contemplated

by the interim support order. *Id.* at 46. Thus, Husband asserts that his payments towards the Beach Avenue property were not offset by any other property and the court's "failure to allocate to Wife a portion of the debt incurred as a result of [the post-separation carrying costs of the Beach Avenue property] was wholly inconsistent with its 50/50 proposed equitable distribution plan." *Id.*

Wife responds by pointing out that, while Husband originally resided in the Blough Court property post-separation, he eventually moved elsewhere

and his mother and sister continued to reside there. "Husband never collected any rent from his mother or sister, though the property clearly could easily have been rented as it was previously rented to a third party." Wife's Brief at 20 (citations omitted). Wife argues that if the Blough Court property was rented, "the majority, if not all, of the carrying costs would have been satisfied." *Id.* at 22.

While we agree with Wife that Husband could have sought rental income to offset the carrying costs of the Blough Court property, he was not required to do so.[14] The interim support order provided that Wife was to pay the costs of the Yardley Road property in exchange for her exclusive possession of that property, and Husband was required to pay the costs of the Blough Court property, which he exclusively possessed, **and** the Beach Avenue property. In essence, Husband was saddled with the costs of two properties while Wife was only required to pay the costs for one. The fact that Husband decided to incur additional expenses by moving out of the Blough Court property despite being granted exclusive possession of the property is of no moment. Instead, we are persuaded by Husband's argument that, contrary to the trial court's conclusions, the costs incurred by the parties' attendant to Yardley Road and

---

[14] Nor was any competent evidence introduced to determine what amount of money Husband would have realized if he sought to rent the Blough Court property.

Blough Court properties offset each other, and the Beach Avenue property stood independently of the others.

Consequently, just as the trial court found a 50/50 split of the marital assets equitable, the trial court should have treated the marital debts similarly.[15] *See Anderson v. Anderson*, 822 A.2d 824, 830 (Pa. Super. 2003) ("[The] husband received a disproportionately greater share of the marital assets; therefore, to effectuate economic justice, *i.e.* to equally distribute the marital assets, husband also had to assume a disproportionate share of the marital debt *to offset* his disproportionate share of the marital estate."). Because we determine the trial court improperly offset the debt from the Beach Avenue property with the Blough Court property with no consideration of Wife's exclusive possession of the Yardley Road property, we conclude the trial court abused its discretion.

In light of the foregoing, we reverse and remand for the trial to reexamine the aforementioned issues in accordance with the statutes and case law cited *supra*.[16] Because our reversal may disturb the equitable distribution

---

[15] Notably, Husband testified that he suggested to Wife that they rent out the Beach Avenue property "hoping that [the parties] could rent it to offset some of the carrying costs of the house" but Wife said, "no[. Wife did not] want to rent the house out" and "refused to sign onto that." N.T., 8/24/2017, at 165-166.

[16] The trial court, in its discretion, may make these determinations based on the existing record, or may opt to reopen the record for further testimony.

scheme, upon remand, we direct the trial court to make the necessary alterations needed to effectuate economic justice and ensure a fair and just determination.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/3/19